## LeBLANC v. CHECKER CAB CO., INC.

———

(April 23, 1928. Opinion and Decree.)
(May 21, 1928. Rehearing Refused.)
(July 2, 1928. Writ of Certiorari and Review denied by Supreme Court.)

———

*(Syllabus by the Court)*

1. Louisiana Digest—Automobiles—Par. 4.

A taxicab driver should regulate the speed of his cab to conform to traffic conditions. On a carnival night when the streets are crowded with automobiles and pedestrians unusual care must be observed by the driver of a taxicab and his cab should be at all times under control and its speed such as to permit a complete stop in a short distance.

2. Louisiana Digest—Automobiles—Par. 9; Damages—Par. 103.

No rule obtains, and no standard exists for measuring damages due to physical or mental injuries. The awards in cases are necessarily inaccurate and lacking in uniformity.

Appeal from Civil District Court, Div. "D." Hon. Walter A. Gleason, Judge.

Action by Mrs. Joseph A. Le Blanc against Checker Cab Co., Inc.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

Louis L. Rosen, of New Orleans, attorney for plaintiff, appellee.

P. L. Fourchy, of New Orleans, attorney for defendant, appellant.

## OPINION

WESTERFIELD, J. Plaintiff in her own behalf, and on behalf of her four minor children, claims damages for the negligent killing of her husband, Joseph A. LeBlanc.

The accident, which resulted in the death of LeBlanc, occurred on the night of February 24, 1927, Mardi Gras, just after the passing of the Comus parade at St. Margaret's Place at the intersection of Prytania and Clio Streets. A taxicab, operated by a servant of the defendant, struck plaintiff, as he stepped on the sidewalk, or, as some witnesses say, after he had reached the sidewalk on the river side of Prytania Street. He was knocked down and rolled over, his ribs were broken, his spleen and liver crushed and otherwise bodily injured. He was conscious of the fatal character of the accident, spoke of his great agony while being transported to the hospital, and died before reaching the hospital.

It is admitted that LeBlanc was without fault, but insisted that the driver of defendant's cab was also blameless, the accident being imputed to the fault of an elderly couple by the name of Moran, who, it is alleged ran in front of defendant's taxicab at a time when the driver could only avoid hitting them by swerving sharply to the left, and in doing so killed LeBlanc, an unavoidable accident due to an emergency, created by the negligent conduct of the Morans.

As has been said, the accident occurred on Mardi Gras night, which is the statement of the witnesses, but counsel, in their brief, say the Thursday before Mardi Gras, or the night of the Momus parade. We must accept the evidence in the record, but there is little difference, so far as this case is concerned, because as is well known, the streets in the vicinity of carnival parades before, during and just after carnival parades, are crowded with pedestrians. Richard Scott, defendant's taxicab driver testified that at the time of the accident, he was proceeding up Prytania Street toward Jackson Avenue at about eight or ten miles per hour and at that speed he could stop his cab within three feet, that, as he neared Clio Street, the Morans ran out from a group of people, on the sidewalk, just in front of his cab when only eight feet from his front fender, and that to avoid hitting them he swerved sharply to the left and struck LeBlanc, who with his wife was just stepping on the sidewalk; that he did not drive on the sidewalk either before or after striking LeBlanc and that LeBlanc was not on the sidewalk when struck, but just stepping out of the street to the banquette. It is difficult to believe that an old couple would dart in front of his moving cab when only eight feet distant. A young couple might do so, for youth is venturesome, but the aged are more conservative, and conscious of their limitations in agility and otherwise. But if the Morans did, as the witness declared they did, why not stop the cab in the eight feet, since it could be stopped in three. Moreover, the Morans could not have progressed very far in the intersection, since they only entered when the cab was eight feet distant. They must therefore have been near the curb, the lake curb, which according to the testimony was forty feet distant from the opposite curb, where LeBlanc was struck and killed. What necessity was there to swerve to that extent.

But we incline to the view that Scott was driving must faster than he will admit. The Morans testify that when they started to cross they saw the headlights

of the taxicab at about Calliope Street, which is one block away. Albert F. Weidig, a witness for defendant, testified that when the Morans entered the street the taxicab was 135 feet distant. Two witnesses testify that the morning after the accident they visited the scene and measured the skid marks of an automobile which commenced at the lake side rail of the car track and ended at the curb, forming the corner of Clio and Prytania Streets, and that this track or skid mark measured fifty-six feet. Moreover, the Morans, or, at least, Mr. Moran, was knocked down by the taxicab. According to the taxicab driver Moran and LeBlanc were on opposite sides of the street, almost forty feet distant. It is apparent that the driver is mistaken.

We believe the record establishes the negligence of the taxicab driver, and that he was driving too fast under the conditions obtaining and whatever emergency arose was due to that fact.

The Court, a qua, allowed $5,000.00 to the widow and $5,000.00 to the four minor children. Plaintiff asks an increase and defendant would have the amount reduced. Deceased was 54 years old and earned $26.60 a week as a carpenter and millwright. His life expectancy was 18 years. Counsel contends that the loss and support alone amounted to $24,897.60. Perhaps the value of earning capacity of deceased would exceed that sum as it is probable that his wages would be increased from time to time. But courts can not award adequate compensation for this, or other items of damages claimed here and in similar actions. How, we ask, would it be possible to accurately appraise physical or mental suffering, the widow's grief, or the child's loss due to the negligent killing of his father or mother.

The sums awarded in these cases are not compensatory and are not standardized. While it may be said that some uniformity should be attempted, so many differences exist in apparently similar cases that little uniformity of award exists or, in the nature of things can be accomplished. In so far as decisions rendered more than ten years ago are concerned, they are not reliable, because expressed in dollars worth then far more than now, because of the notorious decline in the purchasing power of money.

The considerations we have mentioned influence us in our conclusion to affirm the quantum as allowed by the trial court.

For the reasons assigned, the judgment appealed from is affirmed.