**F. STRAUSS & SON, Inc., v. CHILDERS.**

No. 4476.

Court of Appeal of Louisiana. Second Circuit.

April 28, 1933.

J. Norman Coon, of Monroe, for appellant.

Hudson, Potts & Bernstein, of Monroe, for appellee.

**TALIAFERRO, Judge.**

Plaintiff sues to recover damages to its Ford coupé inflicted by defendant's truck running into it on the concrete highway, five miles east of Delhi, La., at about the hour of 3 o'clock a. m., November 19, 1931.

Plaintiff's own truck, proceeding westerly on said highway, the morning of November 18th, had broken down, at the place where the collision happened, and another truck, belonging to Tom Hicks, of the city of Monroe, had been dispatched, near the midnight hour, to bring the disabled Strauss truck to Monroe, some 45 miles west. This truck was operated by W. O. White, a mechanic of Mr. Hicks. C. M. De Lasall, plaintiff's mechanic, and a negro laborer also went along. One of the party drove plaintiff's Ford coupé to the scene of the accident. Arriving on the ground, a steel cable was attached to the disabled truck to pull it by and it was then discovered that its rear wheels were locked. The mechanics set about removing the crank shaft to enable the wheels to revolve. To provide light for the working mechanics, the Ford coupé was moved over on the south side of the highway (it runs almost due east and west) and placed in an angling position (about 45 degrees), with reference to the line of the two trucks, with its brightly burning lights focused upon the rear end of the Strauss truck. As stated before, the Strauss truck was headed west. The Hicks truck was immediately in front of it, likewise headed west. The two right side wheels of the Strauss truck were on the dirt shoulders of the road, north side, with the left wheels 4½ or 5 feet from the meridian line of the concrete. The pavement there is 18 feet wide. The left front wheel of the Hicks truck was 22 inches from the center line of the road with the right rear wheel off of the pavement. There is sharp difference between the witnesses of plaintiff and those of defendant as to the location of the Ford coupé. Plaintiff's witnesses declare it was entirely off the paved portion of the road, while the witnesses for defendant say that the front portion of the coupé extended over the pavement some four feet. Its rear end (which pointed west) was further from the truck than was its front end, because its lights were directed against the rear of the Strauss truck. Accepting the testimony of defendant's witnesses on this point, there would be clearance of 9 feet at the narrowest point between the coupé and trucks. The headlights of the Hicks truck were burning, lighting the road towards the west, while a spot light on top of its cab, 7 feet from the ground, was focused on the Strauss truck to assist in illuminating the surroundings about the mechanics engaged in removing the crank shaft. To the east of the Strauss truck was a concrete bridge, of equal width with the

paved portion of the road. The distance this bridge was from the truck is variously given at from 20 to 75 feet. We do not think it necessary to decide definitely what this distance was in order to correctly dispose of this case. In addition to the illumination of the surroundings, mentioned above, plaintiff's employees, before beginning work on the disabled truck, as additional precautionary measures, placed a lighted lantern at or near the west end of said bridge and one about 100 feet west of the Hicks truck.

While the status of things was as above described, some automobiles passed without injury, and without any change in the set-up, defendant's truck was seen and heard approaching from the east, making from 20 to 25 miles per hour, carrying five tons of cotton seed. De Lasall, as he did when other cars approached the scene, from the east, and while the approaching truck was three or four hundred feet away, hastened to the end of the bridge with a flash-light for a signal, and endeavored to flag it down, but its operator failed to see the signal and failed to see the lighted lantern in the road and continued his course, forcing De Lasall to jump out of his way. This operator says he was within 20 feet of the Strauss truck before he saw it, and, in the successful effort to avoid colliding with it, suddenly pulled the truck to his left and rammed the coupé, inflicting the damages herein sued for.

A mist of rain was falling, a fog hung over the road, and it was wet and slippery.

Plaintiff alleges that the negligence of defendant's agents and employees in operating the heavily loaded truck at a fast and reckless rate of speed, without it being equipped with proper headlights and windshield wiper, on a misty night, thereby rendering it impossible for the operator to see ahead, was the sole cause of said collision; and that its own agents and employees were in no way guilty of any contributory negligence.

Defendant resists this suit on the following grounds, viz.:

(1) That it was gross negligence for plaintiff to leave its broken-down truck on the highway for 24 hours, and then attempt to remove it in the nighttime without employing precautions necessary to protect traffic.

(2) That, while admitting the Strauss and White trucks were on their side of the highway, their position operated a complete blockage and obstruction of that side of the road, and that the Ford coupé obstructed at least four feet of the other side thereof.

(3) That as the Hicks truck obstructed the entire north half of the highway and the Ford coupé obstructed at least 4 feet of the south half thereof, there was left only 4 feet of unobstructed road available for the passage of his truck, which was insufficient; that, faced with this situation, his operator adopted the course of least resistance and ran his truck into the coupé, thereby inflicting the least possible damages to both vehicles.

Defendant admits:

That his truck was not equipped with a windshield wiper;

That the lighted lantern was placed by plaintiff's mechanic between the bridge and the Strauss car, and that it was run over by the truck;

That the operator of his truck saw the lights of the Ford coupé but thought it was, without any objective, parked on the highway or was coming from the west towards him; that these lights were very bright and obliterated from vision any other light about the trucks, and served to prevent said operator from seeing said trucks until close to them.

He avers that plaintiff's agents, in arranging the trucks and the coupé on the highway, as described by him, created a trap for traffic; that his agents and employees were not in any manner negligent in the operation of his truck, but on the contrary acted cautiously and prudently, and did all they could to avert the collision after discovering the dangerous situation to which they were exposed. Contributory negligence on part of plaintiff's agents and employees is specially pleaded.

Defendant reconvened and sued plaintiff for the damages to his truck as a result of the collision, $197.85; for loss of profits for the time the truck was undergoing repairs, and other items, aggregating $408.06, including said repair bill.

The lower court gave plaintiff judgment for the amount sued for, and rejected defendant's reconventional demand. Defendant appealed.

It cannot be seriously questioned that the relative position of the two trucks, on the north side of the highway, and the coupé, on the south side thereof, created a hazardous condition for traffic at that point; yet automobiles did pass between the two lines without injury. The Strauss truck could not well be moved until its rear wheels were unlocked, and to effect this end it was necessary that there be light for the workmen. Defendant's complaint on this score is that there was too much light—so much that the operator of his truck was blinded. It should be kept in mind that this collision occurred about 3 o'clock in the morning, while a mist was falling, and fog enveloped the surroundings. Little or no traffic could be expected on the highway under these conditions, and the same degree of caution against injury to traffic, as would be required during the day or early hours of night, would not be expected. However, it appears to us that plaintiff's employees were ultraprecautious and prudent, under the circumstances, in their efforts to protect traffic from injury on account of the presence of the trucks and car there at

the time. The fact that several cars did observe the situation and pass by safely discloses beyond question that the road was not blocked to the extent and in the manner claimed by defendant, and as testified to by the operator of his truck.

We think the efficient and proximate cause of the collision cannot be ascribed to the acts of plaintiff's agents on this occasion. The operator of defendant's truck violated a rule of the road, which, in our opinion, fastened on him the primary responsibility for the emergency he was confronted with upon discovering the presence of the Strauss truck. It is admitted that defendant's truck had no windshield wiper. It is shown that a mist of rain was falling and that fog hung over the road. A windshield wiper is a material factor contributing to safety of operation under such circumstances. Defendant's operator admits that he could not see well or very far through the windshield. He is corroborated by a companion who rode on the seat with him and who saw the Strauss truck 70 feet away. This operator admits that in order to see where he was going he continuously kept his head extended through the door of the truck on his left. In doing this his ability to see on his right side was affected. Under such circumstances he could only operate the truck at considerable disadvantage, and, in view of its heavy load, should have traveled at a very slow rate of speed. At all events, the truck should have been so operated as to have been stopped within the distance illuminated by its headlights. This, it appears, was not done. The driver of defendant's truck says that the lights from the Ford coupé blinded him so that he could not see objects ahead of him. Under such circumstances it was his plain duty to have brought and kept the truck under such control as to have been able to stop it instantly. He admits, at the rate he was going, the truck could only be stopped within 100 to 150 feet.

An operator of an automobile on a public highway in the nighttime should, and it is his bounden duty to, observe every rule designed to, and which in fact, if observed, does, contribute to the security and safety of travel thereon; and it is required of him, under penalty of responsibility for not doing so, that when his vision is obscured regardless of the cause, that he bring his machine under such control and operate it at such rate of speed that it may be stopped within the distance illuminated by its headlights; and, if necessary, in the interest of safety to himself and others, bring the car to a dead stop until the emergency confronting him, or the cause of interference with his power of vision, had ceased. A motorist has not the right to assume that his course of travel is free of danger or obstruction, in the absence of his ability to see clearly ahead. If he does so assume and continues to travel as though he knew there was perfect clearance ahead, he does so at his own risk and peril.

We had occasion to consider recent decisions pertinent to the issue discussed here, in the case of Locke v. Shreveport Laundries, Inc., 18 La. App. 169, 137 So. 645. The reasons for judgment in that case find application to the case at bar.

For the reasons herein assigned, the judgment appealed from is affirmed.