accordance with the provisions of sec. 4 of Act 112 of 1916.

The appellant answered the motion to dismiss, setting forth that the bond is valid and sufficient and, as a matter of precaution, filed a supplemental bond signed by a surety company authorized to do business in this State.

The original appeal bond was signed for the appellant by his attorney, and his attorney also signed the bond as surety.

The appellee contends that the original appeal bond is invalid for the reason that the appellant did not make oath as to the solvency or sufficiency of the surety.

The appellant is primarily bound for the debt involved, and it is not necessary for him to sign the appeal bond as principal. Maddox v. Butchee, 201 La. 876, 10 So.2d 687; Queen Ins. Co. of America v. Bloomenstiel, 184 La. 1070, 1074, 168 So. 302; Fontini v. Pine Grove Land Co., Inc., 167 La. 137, 118 So. 865.

This Court has repeatedly refused to dismiss an appeal because of error of the nature involved herein when no opportunity has been afforded the appellant to correct the error. Pittman v. Lilly, 197 La. 233, 1 So.2d 88; Succession of Uthoff, 196 La. 892, 200 So. 290; Hammond State Bank & Trust Co. v. Hammond Box & Veneer Co., Ltd., 177 La. 849, 149 So. 498; Lampton Realty Co. v. Kerr, 154 La. 843, 98 So. 266; Act 112 of 1916, as amended.

Under the provisions of Act 112 of 1916, it is the duty of the defendant appellee to

serve notice on the plaintiff appellant in the lower court to have the error complained of corrected by giving him opportunity to furnish a new or supplemental bond. This the appellee has failed to do. Wilson v. Lee, 196 La. 271, 199 So. 117; Succession of Robert Y. Charmbury, 34 La.Ann. 21.

Moreover, if there were error in the execution of the original appeal bond, the error was cured when the valid supplemental appeal bond was filed in this Court. No attack whatsoever has been urged as to the solvency or sufficiency of the supplemental appeal bond.

For the reasons assigned, the motion to dismiss the appeal is denied.

24 So.2d 148

CULPEPPER v. LEONARD TRUCK LINES, Inc.

No. 37766.

Nov. 5, 1945.

Dimick & Hamilton, of Shreveport, for plaintiff and appellant.

Jackson & Mayer and Edward S. Robertson, all of Shreveport, for defendant-respondent.

PONDER, Justice.

The plaintiff, Baylor Culpepper, lessee of the Arlington Hotel building in Shreveport, Louisiana, brought suit against the Leonard Truck Lines, Inc., for the sum of $125 with legal interest from judicial demand, alleged to be due as damages for injury done to the fire escape attached to the hotel building by a truck operated by an employee of the defendant company.

The plaintiff's version of the case is to the effect that the damage was occasioned by the gross negligence of the truck driver.

The defendant takes the position that the truck driver was not negligent, and that

the proximate cause of the damage was the negligence of the plaintiff in failing to maintain the fire escape in a safe and proper condition.

Upon trial, the lower court gave the plaintiff judgment as prayed for. The judgment of the trial court was reversed and the plaintiff's demands were rejected by the Court of Appeal for the Second Circuit. A review was applied for and granted by this Court. The matter is now submitted for our determination.

The rear of the Arlington Hotel abuts a public alley some sixteen feet in width. This alley runs east and west and intersects Louisiana Avenue which runs north and south. The rear of the Arlington Hotel is situated on the southwest corner of the intersection, and there is another building located on the northwest corner facing on Louisiana Ave. The fire escape is attached to the rear of the hotel and extends out and over the alley.

The only eyewitness to the collision between the truck and the fire escape was the defendant's truck driver. He was used by the plaintiff as his witness and testified that on the morning of the accident he was proceeding to the alley with the view of delivering some freight for the defendant to a business concern whose back entrance opened into the alley. Upon approaching the alley, while driving in a southerly direction, he observed a truck parked in the entrance of the alley on the north side, directly opposite of the rear of the Arlington Hotel. He states that he brought his truck to a very low speed and turned to his right into the alley at a speed of about three miles per hour. Because of the parked truck's position on the north side of the alley, he was forced to enter the alley on the south side. He states that he was driving very slowly and carefully in order to avoid striking the parked truck when he felt something strike his truck. He stopped immediately and stepped out of the truck, whereupon he discovered that he had come in contact with the fire escape. He backed his truck and pulled closer to the parked car and proceeded along the alley to make his deliveries. He testified that he had never travelled this alley before and did not see the fire escape until after it came in contact with his truck, and that he could not have seen it because of the locations of the buildings and the parked truck. He further stated that he could not see the fire escape after he entered the alley because of the height of the truck seat and the part of the cab that extended above him.

The fire escape came in contact with the body of the truck approximately four inches from its top, some eight feet and eleven inches from the surface of the alley.

The Court of Appeal found that if the fire escape had been raised to its maximum height, the truck could have passed under it with a two inch clearance and was of the opinion that the fire escape was six inches lower than it should have been if it had been properly maintained. The appellate court was of the opinion that the driver of the truck could not see the fire escape for the reasons given by him and concluded that he was justified in assuming that there would be no obstruction above the surface of the

alley which would come in contact with the top of the truck.

From our examination of the evidence adduced, we find that the truck driver testified as follows:

The Court: "You drive around town and make deliveries at various points in town?"

The Witness: "Yes, sir."

The Court: "It is not unusual in the back of hotels, theaters and things of that kind for fire escapes to be in the alley, is it?"

The Witness: "No, sir. As a rule I can see them and am pretty much familiar with them around in the different alleys; but this had been the first trip I had ever made through that place and, with the truck that was in the alley in mind, wanting to miss it, I didn't give the fire escape any thought."

The Court: "I understand that. However, at the same time, when you drive in these alleys you are aware of the fact that these fire escapes are frequently in them?"

The Witness: "Yes."

■ As we take it, the Court of Appeal's opinion is based on the ground that the truck driver had a right to assume that there would be no obstruction less than twelve feet six inches above the surface of the alley because of the provisions of Act 286 of 1938, as amended by Act 54 of 1942, a statute governing the height of trucks that might be used on the highways of the State. The court points out that the City of Shreveport was without authority to au-

thorize an obstruction in conflict with the State statute.

The defendants concede in their brief, on page 14, that if the obstruction, the fire escape, had been in sufficient view as to have been readily seen, the driver of the truck would be guilty of actionable negligence under the doctrine of last clear chance but contend that the facts in this case show that the position of the fire escape was such that it could not be readily seen.

A fire escape is a large physical object and, in our opinion, should have been readily seen by the truck driver had he used the degree of care required of him under the circumstances in this case.

According to the truck driver's testimony, he was cognizant of the fact that there were fire escapes in other alleys in the city. Upon entering the alley with his view obstructed by the parked truck, he had no right to assume that his course of travel was free of danger or obstruction.

■ "A motorist must use such diligence and care as is commensurate with the dangerous character of the locality. But, even though the danger be slight, he is not absolved from the duty to look ahead. We said in Jones v. [Chicago], Rock Island [& P.] Ry. Co., 4 La.App. 457, 464." Buckley v. Featherstone Garage, Inc., 11 La.App. 564, 123 So. 446, 450.

■ ."The greater the danger the greater the degree of care required is a universal rule in the law of negligence." Barret et al. v. Caddo Transfer & Warehouse Co., Inc.,

165 La. 1075, 116 So. 563, 564, 58 A.L.R. 261.

■ "A motorist has not the right to assume that his course of travel is free of danger or obstruction, in the absence of his ability to see clearly ahead. If he does so assume and continues to travel as though he knew there was perfect clearance ahead, he does so at his own risk and peril." F. Strauss & Son, Inc., v. Childers, La.App., 147 So. 536, 538.

■ "* * * A motorist approaching an intersection, where his vision of oncoming traffic is obstructed, should either bring his car to a full stop or decrease its velocity to such a slow speed so that, in the event of an emergency, he can stop it instantly." Hobbs v. Employers' Liability Assur. Corporation, La.App., 188 So. 191, 195.

■ "It is also negligence for one to drive a motor vehicle at a greater rate of speed than is prudent under the circumstances. Act 286 of 1938, sec. 3, Rule 4(a); Le Blanc v. Checker Cab Co., Orleans, 8 La.App. 472, 474; Overstreet v. Ober, 2 Cir., 14 La.App. 633, 130 So. 648, 650; Ledet v. Gottleber, La.App., Orleans, 143 So. 71, 72. In our opinion, when a motorist's view ahead is obstructed by a curve in the road or any other obstruction, he should drive at a speed which will permit him to stop before arriving at any vehicle, person, animal or obstruction in the road which may come into his view ahead of him as he travels and which may be either stationary, moving in the same direction he is moving, or crossing the road. For him to drive at a greater rate of speed than that under such

circumstances is imprudence and negligence." Russo v. Aucoin, La.App., 7 So.2d 744, 748. Also see: Forst v. Travelers Ins. Co., 15 So.2d 100.

When the truck driver entered the alley on the wrong side and continued to travel without observing as large a physical object as a fire escape, he undoubtedly failed to observe that which he should have seen. According to his testimony, the lower end of the fire escape could not have been more than approximately two feet above the top of his head while he was sitting in the cab of his truck.

■ For the purpose of this decision, we might concede that the obstruction was unlawful. However, the facts in this case leave some doubt on that point. The fact that an obstruction is unlawful cannot excuse a motorist from exercising the degree of care required of him.

In the case of Kirk v. United Gas Public Service Co., 185 La. 580, 170 So. 1, 3, this Court quoted with approval an observation made in a prior case as follows:

"* * * but as to obstructions unlawfully upon the roadway, their failure to have noted the situation will not be attributed to want of ordinary care in observing the way, unless the evidence shows the obstruction to have been such that the failure to have noted the situation shows the driver to have been carelessly or recklessly driving upon the highway."

We are not presented with a case where the obstruction is deceptive or not readily seen. The failure of the truck driver to observe the fire escape, in our opinion, shows

carelessness or recklessness on his part, and he could have avoided running into the fire escape if he had used the degree of care required of him.

The cases cited by the defendant in support of its contention are not in point. They involve municipalities which are governed by different rule and obstructions that are deceptive or not readily seen.

For the reasons assigned, the judgment of the Court of Appeal for the Second Circuit is reversed and set aside. The judgment of the trial court is reinstated and made the judgment of this Court. All costs to be paid by the defendant.