GLADNEY, Judge.
Plaintiff’s action is for damages for personal injuries sustained by him in an accident on December 11, 1951, before daylight about 6:15 A.M. on U.S. Highway 80, five miles west of Minden, Louisiana, which occurred when Francis A. Graham drove a Chevrolet pick-up truck owned by his employer, George W. Fowler, into the rear end of a Chevrolet truck and semi-trailer loaded with lumber. The lumber truck was owned by W. L. Bennett of Ruston and was being driven by Earnest Lynn. Vowell, at the time of the collision, was seated next to Graham. Jack Salmon was seated to Vowell’s right and Roland Dyck was in the rear of the same truck which was enclosed somewhat as a panel truck. All were employees of Fowler. Lynn was unaccompanied.- Bennett and his liability carrier were made defendants. Fowler’s employer’s compensation carrier has intervened under appropriate provisions of the Workmen’s Compensation statute to be reimbursed the amount paid thereunder.
For a cause of action, plaintiff made allegations as to these facts: That while traveling in a westerly direction on said highway in a truck of his employer, accompanied by three other employees, at approximately forty miles per hour, during the early morning hours before daybreak, with his lights fully functioning, on their way to work, he ran into the rear of the truck of the defendant, W. L. Bennett, driven and operated by his employee, Earnest Lynn, who had stopped the truck in the right lane of traffic, proceeding west, the direction in which both trucks were traveling; that the Bennett truck was without lights, although the morning was dark and the weather foggy, making it impossible to see the parked truck in time to take effective measures to avoid a collision.
Plaintiff particularly alleged that defendant’s driver was negligent in failing to make sure his lights were operating properly or to keep them burning, in failing to set out flares to warn approaching traffic of the presence of his truck on the highway, in not removing the vehicle from the highway before stopping, and in not keeping a proper lookout for traffic on the highway.
The defendants after filing an exception of no cause or right of action, answered, denying Bennett’s driver was in any way or to any extent negligent, and averred that the proximate cause of the accident was plaintiff’s negligence in proceeding at a reckless and careless rate of speed, in failing to keep a proper lookout, and in failing to maintain a proper control over his vehicle. •'
From a judgment in favor of plaintiff for the principal sum of $20,700, and a *585 responsive judgment in favor of intervenor, the defendants have appealed. After trial of the case on the merits plaintiff died October 22, 1953, from causes not related to the accident and his widow, as adminis-tratrix, has been substituted as party plaintiff.
Separate cases were filed by each of plaintiff’s fellow employees against these defendants, in which their employer’s compensation insurance carrier intervened. Those cases are now before this court on separate appeals.
The evidence reveals that U.S. Highway 80 which had recently been widened and resurfaced with a bitulithic treatment, at the scene of this accident was approximately twenty-four feet wide, exclusive of the shoulders; that the shoulder on the north side and to the right of both trucks was six feet wide and from there declined in a ditch for a depth of twelve feet, six inches. Approaching from the east, the highway proceeded on a very slight "incline to and possibly a short distance beyond the scene of the accident, which was located also beyond a curve to the left in the direction the trucks were headed
Mr. H. T. Hinton, a deliveryman for a dairy, had stopped his milk truck to the right, with the left wheels approximately two feet on the hard surface of the highway, and walked to a residence approximately ninety feet away on the south or opposite side of the highway for the purpose of ascertaining the address of a new customer. During his absence from his truck, the lumber truck arrived and, according to its driver’s contention, on account of oncoming traffic, he was unable to pass the milk truck to the left, which required his stopping with his motor running until he could pass without hazard to the oncoming traffic. Shortly afterward the pick-up truck ran into the rear and wedged itself underneath the lumber truck.
The principal issue before us is whether or not Earnest Lynn, the driver of the defendant vehicle, was guilty of any negligence which was the proximate cause of the accident. The charges that Lynn' was negligent -in’ that he failed to set out flares, in that he failed to pull his vehicle off the road before stopping, and in failing to keep a proper lookout for others using the highway are not proven and after a brief comment we will pass to the main issue. Lynn, the record shows, stopped only for the purpose of waiting until oncoming traffic was out of the way so he could pass the milk truck. He was. ndt parked, so there was no occasion to set out flares or pull his vehicle off of the highway. The charge of failing to keep a proper lookout to his rear, in view of the circumstances, is likewise untenable. Plaintiff’s allegations of negligence must rest upon the contention Lynn failed to ascertain that his lights were properly operating and in failing to keep the lights burning.
The evidence reveals that defendant’s driver on the afternoon of December 10, 1951, secured a load of lumber at or near Sikes, Louisiana, proceeded to Ruston, parking the truck with the Rose Oil Company filling station for the night and proceeding the following mo.rning at about 4:00 o’clock on his journey for Shreveport. He testified that he did not stop anywhere after beginning his journey until reaching the scene of the accident, which was only a short distance (not more than a mile) west of Dixie Inn.
Graham, who resides in Cotton Valley, ■and who was the driver of his employer’s truck, secured two fellow employees’ in Cotton Valley and proceeded to the Dixie Inn, whereupon the third employee, Jack Salmon, joined their party, and they together proceeded westward, with Graham as driver, on Highway 80 for Mooringsport, 1 Louisiana, where they were employed. Graham and two of the others were in the cab and the other, Roland Dyck, was in the enclosed rear portion of the truck.
According to Graham’s testimony it was frosty and clear, he was driving approximately .forty miles per hour, ■ and after proceeding up a slight incline and around a slight curve, his lights first focused on the white milk truck about one hundred and *586 •fifty feet away, parked on the edge but primarily on the shoulder of the road, and ■then, on completing the curve, his lights again reflected straight ahead and upon the loaded truck, about seventy-five feet away, in his lane of traffic, and that although he applied his brakes and skidded his wheels, he lacked time and opportunity to do anything effective to prevent the collision. His truck slid into the rear of the load of lumber and underneath the load, where his truck caught fire, but was readily extinguished. All thje occupants were picked up by a passer-by and carried to a Minden clinic. Graham said the lumber truck was without lights, particularly the rear lights, and in describing his movements and the situation, testified:
“Well, I left the cafe driving toward Shreveport, and I was driving, and after we rounded a curve and started up that incline I could see that milk truck just as I got around the curve and my lights got back on the road. I guess it was a hundred to a hundred and fifty feet to the milk truck, but I did not see the lumber truck until I was in seventy-five feet, and I stepped on the brakes as quick as I could. I couldn’t pass. The milk truck was sitting on the road and the lumber truck was in my lane, so the pick-up truck slid under the back of the lumber.”
On account of oncoming traffic, Graham was prevented from going to the left to avoid striking the lumber truck.
One of those riding in the cab with Graham was Jack Salmon, the employee picked up at Dixie Inn. He testified the weather was clear, that they had gone around the curve and started into a straight stretch up the hill, that he first saw the milk truck and later the lumber truck, the former approximately two hundred feet away and the latter only forty to fifty feet, he noticed the milk truck had reflectors and that the lumber truck was parked without lights or flares. The milk truck had two wheels barely on the black top. It appeared to this witness that the driver of the lumber truck was about to start up and that it was almost alongside the milk truck.
Plaintiff, who was riding in the cab between Graham and Salmon, noticed the lights on the milk truck one hundred feet away or further but did not see the lumber truck until they were almost on it, not until after the brakes were applied. He was rendered unconscious. However, he was looking straight ahead at the time of the accident, attracted by a light on the milk truck.
Roland Dyck was the employee riding in the rear of the pick-up and who could only see through an opening to the rear and, therefore, prior to the actual collision, which he perceived from the application of the brakes, he could not, of course, see whether there were lights on the parked truck prior to the accident. He testified:
“Q. Do you remember seeing any lights on the lumber truck? A. No, sir, I didn’t see a light on it. I did see one on the milk track, but none on the lumber truck.”
Mrs. Agnes Holliday, whose residence was approximately ninety feet from the scene of the accident and who was standing at her door, testified that the weather was smoky and foggy and that prior to the accident she did not know the lumber track had parked on the highway and, therefore, that she did not see any lights on it.
Mr. J. B. Faircloth, an employee of the Highway Department, did not see the accident but was proceeding to Bossier City behind the pick-up truck and was at the scene within minutes thereafter. Mr Fair-cloth was waiting in the cafe, Dixie Inn, for a truck to carry him to Bossier City. He testified he saw three of the occupants of the pick-up truck in the cafe where they got coffee; that he saw the lumber truck parked there and that a colored driver who came out of the cafe got into the truck and left. Mr Faircloth said there were no tail lights on the truck as it was driven away from the cafe. His description was that *587 the weather was foggy and dark and that there were neither lights nor reflectors on the truck at the scene of the accident.
Mr. H. L. Bailey, state trooper, testifying on behalf of the defendants, stated he came to the scene of the accident about 6:45 o’clock, A.M. and found the two trucks still wedged together. His testimony reveals that the lumber truck was in the traffic lane proceeding west and the milk truck was approximately two feet on the highway and at the time of his arrival at the scene only one tail light on the lumber truck was burning; two others were broken out; also that the pick-up truck skidded approximately seventy-eight feet.
Besides the affirmative testimony of Bailey as to the one tail light, Lynn testified his lights were burning. Testimony of a substantiating character came from W. L. Bennett, A. F. Mann and S. A. Womack. Bennett said he kept his equipment in good order and that he required regular inspections by the Rose Oil Company at Rus-ten, at which station he kept his truck. A. F. Mann of the Rose Oil Company confirmed his testimony that regular inspections were made. S. A. Womack, a mechanic at Ruston, said he examined the truck there after the collision and the tail lights were properly functioning.
Has plaintiff established by a preponderance of the evidence the negligence of the truck driver in operating the truck with improper lights? We do not think so. None of plaintiff’s witnesses testified as to whether the Bennett truck’s tail lights were observed not functioning while the trucks were wedged together. We confess we entertain some doubt as to the testimony of Faircloth. None of the occupants of the Fowler truck who had coffee at the Dixie Inn said they saw Faircloth there nor did anyone else. He testified he had known Vowell, Dyck and Salmon for fifteen or twenty years. Hickman was driving the highway truck Faircloth was riding in. Hickman was not a witness. Plaintiff’s counsel sought to show by inference the trailer lights might not have been connected or were connected after the collision by Lynn. This is too speculative to be persuasive, and is certainly outweighed by the evidence that at least the tail light was burning.
The occupants of the pick-up truck alone said the weather was clear. Uniformly the other witnesses testified to the contrary, that it was foggy or there was a drizzle. Testimony to the effect that the milk truck could be seen without the lumber truck also being observed simultaneously is, we confess, difficult to understand. It is indicated Graham was either driving at an unsafe speed under prevailing weather conditions or he was not maintaining a proper lookout. Bailey’s testimony that he found straight skid marks seventy-eight feet in length on the uphill grade is largely corroborated by the testimony of Graham. The sole and proximate cause of the accident was, we believe, due to the fact the truck was being driven at an unsafe speed under prevailing weather conditions. See: Huffman v. Harman, 1931, 16 La.App. 50, 133 So. 481; F. Strauss & Son v. Childers, La.App. 1933, 147 So. 536; Fontanille v. Ducote, La.App. 1934, 155 So. 46; Rosenbloom v. Mercer, La.App. 1942, 8 So.2d 328; Culpepper v. Leonard Truck Lines, 1945, 208 La. 1084, 24 So.2d 148; Rachal v. Balthazar, La.App. 1947, 32 So.2d 483.
Though it is argued that the width of the highway would have permitted Lynn to pass the milk truck in the face of oncoming traffic, if this be a charge of negligence, it was not covered by plaintiff’s pleadings and cannot be considered.
The conclusion reached herein does not warrant a consideration of defendant’s exception of no cause or right of action.
We find the driver of Bennett’s truck was free of any act of negligence and particularly that the burden of proving improper lights was not sustained. It follows, therefore, that the judgment from which appealed must be and is hereby reversed and plaintiff’s action is dismissed. It is further ordered that the judgment in favor of the intervenor be reversed and inter-venor’s claim is hereby denied. Costs are *588 to be prorated equally between plaintiff and intervenor.
AYRES, J., dissents for the reason that he is of the opinion that the driver of defendant’s truck was guilty of negligence constituting a proximate cause of the accident.