230 So.2d 615 (1969)
John E. DOVE, Sr. et ux.,
v.
Joseph P. MESSINA et al.
No. 7774.
Court of Appeal of Louisiana, First Circuit.
November 17, 1969.
Rehearing Denied December 22, 1969.
Dissenting Opinion January 26, 1970.
Writ Refused February 27, 1970.
William A. Norfolk, of Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, for defendant-appellant.
E. Clark Gaudin, of Smith & Gaudin, Baton Rouge, for plaintiff-appellee.
Before LOTTINGER, REID and BLANCHE, JJ.
LOTTINGER, Judge.
This is a suit by John E. Dove and his wife, Mildred P. Dove, for property damages and personal injuries resulting from *616 an automobile accident. The defendants are Joseph P. Messina, the owner of a cane truck, and his insurer, the Travelers Insurance Company. After trial the Lower Court gave judgment in favor of petitioners and against defendants, and the defendants have appealed. The petitioners have not appealed nor have they answered the appeal.
On the morning of October 15, 1967, at approximately seven o'clock a. m., petitioner, Mrs. Dove, was driving slowly, because of heavy fog, in a northerly direction on Louisiana State Highway No. 1 in the Parish of Pointe Coupee, State of Louisiana. It is contended by petitioner that at the time of the accident she was traveling some five to ten miles per hour because of the heavy fog. A truck belonging to defendant, Joseph P. Messina, but driven by his employee, Noah Osborne, Jr., was following the petitioner's vehicle on Louisiana State Highway No. 1, and was also proceeding in a northerly direction but at a speed of approximately twenty-five to thirty miles per hour. Osborne testified that he did not notice petitioner's vehicle until he got about twenty feet behind it and he immediately attempted to swerve to the left in order to avoid striking the Dove Automobile. The right rear wheel of the cane truck, however, struck the left rear of the automobile causing the automobile to flip onto its top. As stated before, at the time of the accident there was a heavy fog and the highway was wet.
The defendant's version of the accident is that Osborne was driving in his righthand northbound lane of traffic at a speed of twenty-five to thirty miles per hour when the truck suddenly came upon the Dove vehicle which was illegally stopped on the highway in the northbound lane. It is therefore contended by defendants that the petitioner driver, Mrs. Dove, was guilty of contributory negligence in illegally stopping in the traveled portion of the highway in violation of R.S. 32:141(A) and that she, therefore, should be denied recovery.
Following the accident, Mrs. Dove's trousers caught fire and the greatest part of her injuries consisted of burns. The Trial Court awarded petitioner $7,500 for personal injuries, plus specials, from which the defendants have perfected this appeal.
The specifications of error claimed by defendants are as follows:
(1) The court erred in giving any credence to any testimony given by plaintiff, Mildred P. Dove.
(2) The court erred in failing to hold that plaintiff was guilty of contributory negligence proximately causing the accident, in stopping her automobile on the highway.
(3) The court erred in awarding damages for burns when plaintiff failed to prove that the burns were caused by the accident.
We have not been favored with a written opinion by the Lower Court. We are, therefore, unable to tell what weight the Lower Court gave to the testimony of Mrs. Dove, or whether it gave her testimony any weight whatsoever. There was no real variation of Mrs. Dove's testimony with that of some of the other witnesses as to the fact of whether she was proceeding at a speed of some five or ten miles per hour at the time of the accident or whether she was stopped, as is contended by defendant. At least three other witnesses other than Mrs. Dove testified that it was apparent to them that Mrs. Dove was not stopped at the time of the accident as there were no scuff marks on the highway and had the automobile been stopped there would have been scuff marks on the highway. The only testimony to the effect that she was stopped on the highway at the time of the accident was that of Noah Osborne, the driver of the truck, who testified uncertainly that when he first saw the automobile it appeared to him that it was stopped. Osborne first noticed the Dove automobile only a split second before the impact during which time he was busy trying *617 to avoid the collision. His testimony on this point was only a supposition and the Trial Court was correct in rejecting it in favor of the overwhelming contrary evidence.
A great weight of the testimony was to the effect that Mrs. Dove was proceeding at a slow rate of speed because of the fog at the time of the accident. We find her guilty of no contributory negligence which would have resulted in this accident.
The only other bone of contention before us is as to the cause of Mrs. Dove's slacks catching on fire. There is considerable testimony and evidence in the record to the effect that there were no burns on the automobile itself and that evidently the only fire was to Mrs. Dove's person.
The defendants introduced Mr. Robert L. Craxton, an experienced auto appraiser, who examined the automobile several months after the accident, at a time when many of the parts of this wrecked vehicle had been sold by the junk yard at which it was stored, and who testified that he examined the automobile and found no indication or evidence either inside or outside of any fire or fire damage. Mr. William Adams, Jr., viewed and photographed the interior of the car and he claimed that he saw no fire damage. Mr. Floyd A. Gravier, who testified on behalf of petitioners, stated that he and Mr. Dove went to examine the automobile following the accident and that under the hood, near the ignition, where the wires go through the fire wall, there was evidence of a small flash type of fire. Mr. Richard Bello, whose home was just a few feet from the scene of the accident, and who was one of the first to appear on the scene, testified that it looked to him that the driver's seat was charred a little bit.
The defendants, however, contend, with no evidence to support their contention, that Mrs. Dove might have been lighting or smoking a cigarette at the time of impact and put herself on fire. But Mrs. Dove testified that she did not smoke, and no one testified as to seeing a cigarette or cigarette butts in the automobile. But let us suppose, for the purpose of argument, that Mrs. Dove was in the process of lighting or was smoking a cigarette at the time she was struck by the truck, and that the force of the impact caused her to drop the lighted match or cigarette setting her trousers on fire. This would not impose the fault for the fire on Mrs. Dove, the cause of the fire would still rest upon the negligence of the truck driver.
Furthermore, the evidence discloses that the impact flipped the Dove automobile over on its top and that it skidded upside down for several feet up the highway. It could have been the sparks from the metal grinding against the concrete which inflamed Mrs. Dove's slacks. In any event, there is no evidence whatsoever to show that Mrs. Dove's slacks were on fire prior to the impact, and she was on fire following, and so the reasonable conclusion would be that the accident caused the fire.
Although there was some evidence that Mrs. Dove had been drinking sometime prior to the accident, there is nothing in the record to show that this was a contributing cause of the accident. We believe that the facts of the present case bring it within the ruling of Hernandez v. State Farm Mutual Automobile Insurance Company, La.App., 192 So.2d 679 in which the Court stated:
"The jurisprudence of this state is firmly established to the effect that when visibility is materially impaired because of smoke, mist, dust, fog or other atmospheric conditions, a motorist is held to a duty of operating his vehicle with an unusually high degree of care. He should reduce his rate of speed to such an extent, and keep his car under such control as to reduce to a minimum the possibility of accident from collision. And, as an extreme measure of safety, it is his duty when visibility ahead is not *618 possible or is greatly obscured, to stop his car and remain at a standstill until conditions warrant going forward. He does not have the right to assume that his course of travel is free from danger or obstruction in the absence of his ability to see clearly ahead, and if he continues to travel as if he knew there was perfect clearance ahead, he does so at his own risk and peril. Culpepper v. Leonard Truck Lines, Inc., 208 La. 1084, 24 So.2d 148; Demerest v. Travelers Insurance Co., 234 La. 1048, 102 So.2d 451; Ardoin v. Southern Farm Bureau Casualty Ins. Co., 133 So.2d 129 (La.App.3d Cir. 1961); and Moses v. Mosley, 146 So.2d 263 (La.App.3d Cir. 1962.)"
Again in Ervin v. Burns, La.App., 126 So. 2d 805 where the preceding vehicle had slowed to a speed of ten miles per hour when it was struck by a following truck whose driver testified that he was going fifteen to twenty miles per hour, and citing R.S. 32:234, subd. A, the Court said:
"Under LSA-R.S. 32:234, subd. A, it is the duty of a driver of a motor vehicle not to follow another vehicle more closely than is reasonable and prudent, with due regard to the speed of such vehicle and with consideration to the traffic and the condition of the highway. Obviously, the existence of a dense fog, screening one's view of the highway, is a condition requiring the exercise of the utmost caution and prudence. It is generally recognized in the jurisprudence that a driver of an automobile is under a duty to stop his car when his vision is entirely obscured by a temporary obstruction such as a cloud of dust or smoke. When failure to do so would jeopardize the safety of others, then he must stop and remain at a standstill until the obstruction to his view has come to an end. It is likewise a rule well established that, where a motorist finds himself blinded, whether by bright lights, smoke, dust, fog, or for any other reason, it is his duty to at least bring his vehicle under such control that it can be stopped in a moment in case of emergency, and, in extreme cases, it is his duty to stop.
In the instant case, the plaintiff's driver either stopped her vehicle or slackened her speed (and it is immaterial which she did) because of the condition created by the smoke obscuring her vision. The vision of defendant's driver was likewise affected and had been so obscured for an appreciable length of time, during which, even under those conditions, he traveled at least a mile. His duty was identical with that of hers to slacken his speed and/or stop, if necessary, because of his inability to see ahead, and prevent crashing into a forward car. The actions of the driver of the forward car in reducing her speed and/or stopping her car were only the exercise of precaution which defendant's driver should have likewise exercised.
Nor do we find any merit in defendants' plea that plaintiff's driver was guilty of contributory negligence. The record reveals to our satisfaction, as it did to the trial judge, that she followed a most reasonable course and acted with prudence in either greatly reducing her speed or stopping her car when she drove into the heavy smoke."
Under the above jurisprudence, we find that the Lower Court did not err in holding the driver of the cane truck guilty of negligence which was the proximate cause of the accident and the resulting injuries. Furthermore, there is nothing in the records which indicates any contributory negligence on the part of Mrs. Dove, and certainly the defendants have failed to sustain any burden of proof in this regard. In Demerest v. Travelers Insurance Company, 234 La. 1048, 102 So.2d 451, the Court said:
"Contributory negligence is a special defense, and the defendant carries the burden of establishing it by a preponderance of the evidence." (emphasis added)
*619 We find that the sole proximate cause of this accident was the negligence of Noah Osborne, Jr., in traveling at an excessive rate of speed in view of the heavy fog conditions.
Following the accident, Mrs. Dove was taken to and treated at Baton Rouge General Hospital by Dr. Thomas Roberts. While under his care, she received whirlpool baths twice daily at Baton Rouge General. During this period of treatment she testified that she experienced extreme pain from these burn injuries. She was referred to Dr. Arthur A. Mauterer, a vascular surgeon, during November of 1967. At the time Dr. Mauterer first examined Mrs. Dove she had the result of eschars from the drying of the burns. The burns were apparently third degree burns and certainly deep second degree burns. He described the burns as approximately ten to twelve centimeters in length as to the smaller one and the larger one being twenty to twenty-two centimeters in length, and each being six to seven centimeters wide. Dr. Mauterer admitted Mrs. Dove to the hospital to surgery on November 16, 1967. On November 17, 1967, he debrided the eschars under spinal anethesia and proceeded to use wet dressings to promote the granulation tissue to form. He took her back to surgery on December 5, 1967, when excessive granulation was removed and again on December 7, 1967, for grafting the interior surface of the left and right leg. Thus three operations were performed. She remained in the hospital on this occasion until December 18, 1967. He gave her ten per cent disability as a result of these injuries, and stated she will have some discomfort from the tightness of the burn sites.
The Lower Court awarded Mrs. Dove the sum of $7,500 as damages for her personal injuries. In view of the severity of her injuries, we do not feel that the Lower Court erred in this regard.
The Lower Court also awarded damages to Mr. Dove in the sum of $4,009.48, all items of which were stipulated by counsel prior to trial on the merits.
For the foregoing reasons, the judgment of the Lower Court will be affirmed, all cost of this appeal to be paid by defendant.
Judgment affirmed.
Rehearing denied.
BLANCHE, Judge, (dissenting).
The majority opinion affirmed the trial court because it believed that at the time of the accident Mrs. Dove was proceeding slowly in the fog on Highway 1 when she was struck from the rear by the driver of a cane truck which was insured by defendant-appellant. The crucial point concerning her right to recovery centers around a factual finding of what Mrs. Dove was doing at the time of the accident. There were only two witnesses to the accident.
Mrs. Dove testified that she was proceeding slowly down the highway when struck from the rear by the driver of the cane truck. The cane truck driver testified that she was stopped on a fogbound highway at the time of the collision. The majority admit that they were not influenced by the trial court, as the trial judge gave no reasons for judgment and they were, therefore, unable to tell what weight, if any, he gave to her testimony. However, they hold that there was no real variance in her testimony that she was moving at the time of the accident with that of other witnesses. Evidently, our court gave weight to her testimony because they believe it was corroborated by other evidence. However, this writer will demonstrate that Mrs. Dove's testimony is not worthy of belief and the testimony relied on for corroboration is of no value. Thus, if Mrs. Dove's testimony is not worthy of belief, that only leaves the testimony of the truck driver that she was stopped in the fog on the highway. Further, the rejection of her testimony leaves nothing to corroborate, but even if the so-called corroborating testimony is viewed independently, as will hereinafter be shown, it is too weak to sustain *620 the burden of proof and the judgment in favor of plaintiff should therefore be reversed.
A reading of Mrs. Dove's testimony on deposition convinced this writer that she was a devoted wife and mother. She had worked hard the day before the accident at a doctor's office, came home tired, took a nap and then fixed supper for her husband and fifteen year old son. They had recently purchased a camp on False River for their son, and Mrs. Dove, after a quiet evening at home, left about five o'clock the next morning and proceeded to the camp with the purpose of preparing dinner for her husband and son who were coming over later in the day. She was specifically questioned about drinking and definitely stated that neither she nor her husband drank. She specifically denied drinking the evening before the accident and specifically denied having any alcohol in the car. However, a comparison of her testimony on trial with her testimony on deposition reveals so many inconsistencies that one must conclude that nothing she says can be taken for the truth. At trial and on the question of drinking, she testified that she did not drink either before or after the accident, but she admitted that she had a couple of drinks of vodka on the evening before the accident. In other words, the only time she ever had anything alcoholic to drink was on the evening before the accident. This writer believes it improbable that a 57 year old woman who had never had a drink before or since the accident took her first drink after midnight at the Candlelight Inn in West Baton Rouge Parish. On the question of why she went to Candlelight Inn which is across the river from Baton Rouge on Highway 91 and on the way to her camp, she first testified that she had changed purses and she thought she had left the keys to the camp at home and went into the Candlelight Inn to look for her keys, even though she had a light in the car and could have looked for them without getting out of her car. She also testified that she went into the Candlelight Inn to go to the bathroom. This writer believes that it is improbable that after just leaving home, she would find it necessary to go to the bathroom at the Candlelight Inn or to look for her keys and believes it more probable that she went there to drink. On the question of when she left home, this writer was under the impression that she spent the evening at home but on trial learned that she left home after midnight while her husband and son were at home asleep and went to the Candlelight Inn where she stayed until it closed. This writer believes it improbable that she would leave her home at midnight for the purpose of going to her camp on False River and believes it more consonant with the truth that she went across the river to drink.
Mrs. Dove testified that after leaving the Candlelight Inn she went home and went to sleep and got up at five o'clock to go to the camp. This statement, if believed, indicates that when the foregoing circumstances are considered, Mrs. Dove got very little sleep before she started out on her ill-fated trip. It would seem more likely to the Court if she returned home at that hour of the morning to get her keys (and it is not known from evidence whether she got the keys or not), she would have stayed at home and waited to go to the camp with her family.
On the question of alcohol in the car, at trial she admitted having an unopened bottle of vodka in the car after stating unequivocably on deposition that she had no alcohol in the car of any kind. Other testimony at the trial revealed that one bottle of vodka fell out of the car and broke on the highway as Mrs. Dove was leaving the car and another bottle which had been opened was laying on the back seat of the car. This writer believes that a material issue in the case is the condition of Mrs. Dove at the time of the accident. No officer would have been able to comment on her state of sobriety, as she had left the scene of the accident in an ambulance before they arrived. The correlation between an automobile accident and driving while intoxicated is too significant to be disregarded. The truck driver states that Mrs. Dove was stopped in the highway *621 and if she was in a drunken condition, she would not have been the first drunk so stopped on the highway in violation of the provisions of R.S. 32:141(A).
Counsel for appellant asked us in oral argument what could he tell his client who had asked what could be done about lying on the witness stand. Counsel has a right to have that question answered. The answer is to apply the sanction imposed under the doctrine of "Falsus in Uno, Falsus in Omnibus." Succession of Viosca, 202 So.2d 511 (4th Cir. 1967); Long v. Matthews, 186 So.2d 868 (2d Cir. 1966).
The Viosca case properly discussed the doctrine and its application:
"The trial court judgment is based largely upon an application of the doctrine `Falsus in Uno, Falsus in Omnibus' (He who speaks falsely on one point will speak falsely upon all). Because in his pretrial deposition Jules Viosca admittedly lied about his knowledge and possession of the bonds, the trial judge apparently rejected all of his testimony and also rejected the testimony of Miss Fleckinger. The maxim is a harsh and unrealistic rule which should be applied only with extreme caution. 3 Wigmore, Evidence, §§ 1008, et seq. (3d ed. 1940); 98 C.J.S. Witnesses § 469; see State v. Banks, 40 La.Ann. 736, 5 So. 18.
"Where a witness has testified falsely to some material fact or facts and there are no circumstances in the case tending to corroborate his evidence, his testimony may be rejected in toto; but such false testimony does not require that his testimony be disregarded in its entirety; and the court should not reject those portions of such testimony as may be corroborated by other credible and uncontradicated evidence; to do so is to commit error. Morris v. Morris, La.App., 152 So.2d 291; Goynes v. St. Charles Dairy, La.App., 197 So. 819; Smith v. York, La.App., 152 So. 152."
Applying that rule to the case at hand, it has been shown that Mrs. Dove testified falsely on a material issue in the case, so the next inquiry is whether or not there were circumstances in the case tending to corroborate her testimony that she was moving at the time of the accident. On this question the majority states that at least three other witnesses testified that it was apparent to them that Mrs. Dove was not stopped at the time of the accident, as there were no scuff marks on the highway and had the automobile been stopped, there would have been scuff marks on the highway. The record reveals that only one witness so testified, namely, Officer Thomas D. Guerin of the Louisiana State Police. He was at home when the accident happened, as he testified he got the call around 7:00 A. M. on Sunday morning and he did not go to work until eight o'clock on Sunday, the accident having occurred at approximately seven o'clock on a Sunday morning. Officer Hebert, who was somewhere around Erwinville when the accident happened had already begun the accident investigation and when Officer Guerin arrived, his principal duty there was to direct traffic. Nevertheless, he ventured the following opinion:
"Q Did you ascertainwere you able to ascertain whether the Dove vehicle was moving or stopped?
"A I believe I can, yes, sir.
"Q Could you tell the Court what you think?
"A Well, it's my opinion that the Dove vehicle was in motion at the time of the impact due to the fact that at the point of impact there were no smudges. Now, if an object is hit that's stopped, it's going to leave some smudges where it has been pushed. There were no smudges at the scene althoughso apparently the Dove vehicle was in motion. In other words, in a rolling motion since there *622 were no smudges." (Record, pp. 160, 161)
In other words, the majority opinion hinges its corroboration that Mrs. Dove was moving on the absence of a "smudge."
It does not appear from the record that Officer Guerin had any special qualifications to give such an opinion, save his having been with the State Police for ten years. If common sense is the basis of his opinion, then it makes just as much sense to explain the absence of a smudge because the highway was wet from a heavy fog. Further, if common sense is to be applied, considering the speed of the truck as compared to the speed claimed by Mrs. Dove, a "smudge" should have been made in any event because the truck was going so much faster than the Dove vehicle. Officer Paul J. Hebert testified that the truck driver left 69 feet of skid marks before the impact and traveled another 50 feet on the highway after the impact and another 120 feet after leaving the highway and hit the Dove vehicle hard enough to turn it over. However, there was no smudge on the highway even though the proof of these facts is not in doubt.
Officer Paul J. Hebert, not having been a witness to the accident and having been with the State Police for six years, stated in answers to the following questions by plaintiff's counsel:
"Q Officer, is there any way that you canthat you from your investigation can tell whether or not the Dove vehicle was stopped or whether it was moving very slowly at the time of this impact?
"A That's almost impossible for me to tell you whether it was moving or not. I just went by what she was told me, that she was going about five or ten miles an hour, but for me to tell you, I couldn't tell you whether that car was stopped or moving." (Record, p. 153)
Not being satisfied, Mr. Gaudin again asked:
"Q Officer Hebert, did your physical findings of the two vehicles involved in this accident indicate to you whether the Dove vehicle was stopped or moving?
"A If it indicated whether it was stopped or moving?
"Q Yes.
"A No, it wasn't no way of me knowing whether it was stopped or moving either one, so I didn't
"Q And you don't know?
"A I don't know, that's right. I have my opinion about it but I don't I wouldn'tthe Judge asked me what I" (Record, p. 157)
In fact, in answer to a question by the Court, he stated it was more likely the Dove vehicle was stopped:
"Q From your experience, would it have been easier for that car to turn over if it was moving or if it was stopped?
"A Your Honor, I think it would have been easier for the car to turn over if it was stopped than traveling. If it had been traveling, it would have just made itif it was in that position, it would have just made it keep going; but if it was stopped and hitting it, an object that's stopped, it will flip it over rather than while it's moving, to me. I mean, I might not be right, but that's what I think." (Record, pp. 154, 155)
Finally, the plaintiff should not recover unless the doctrine of res ipsa loquitur applies *623 to her injuries, because she failed to prove that the burns were caused by the accident. Mrs. Dove does not know and there is a total absence of any evidence to show how plaintiff's pants caught on fire. There is no question about there being a fire, but how she caught on fire is the subject of much speculation. The majority speculate that, "It could have been the sparks from the metal grinding against the concrete which inflamed Mrs. Dove's slacks." The Court should not speculate and to hold that "there is no evidence whatsoever to show that Mrs. Dove's slacks were on fire prior to the impact, and she was on fire following, and so the reasonable conclusion would be that the accident caused the fire" is to relieve the plaintiff of the burden of proving that she received her burns as a result of the accident. It is not sufficient for plaintiff to say that she was in an automobile accident and that following the accident she had sustained burns. In shouldering the burden of proof, probabilities and possibilities are not enough. It is for this reason that our jurisprudence has provided that the legal requirement for the burden of proof is satisfied when plaintiff has established to a reasonable certainty that the negligent act caused his injuries. Therefore, it was incumbent on plaintiff to advance some reasonable hypothesis that would support her conclusion that she received her injuries as a result of the accident. There being no evidence as to how she caught on fire, it is just as reasonable to conclude, despite her testimony that she did not smoke, that Mrs. Dove being in a drunken condition caught herself on fire with a lighted cigarette and was stopped in the highway trying to put out the fire when the accident occurred.
For the above and foregoing reasons, I respectfully dissent and am of the opinion that the judgment of the district court should be reversed and for that purpose a rehearing should be granted.