Jimmy Harold Bechtold, age six years and nine months, son of plaintiffs herein, died within two hours from injuries received at about 6:30 P.M., April 26, 1946, when the bicycle on which he was riding (going down grade easterly on Wilkinson Street in the City of Shreveport) violently crashed into the side of a trailer or van attached to and being drawn by a two and one-half (2 1/2) ton International truck of the defendant, East Texas Motor Freight Lines, then being operated by one Arthur Anderson, the owner's agent. The truck was traveling southerly on Samford Avenue. Wilkinson Street intersects the avenue at right angles and there comes to a dead end. At the intersection, both streets are paved and measure 32 feet between curbs. The overall length of the truck and trailer is 35 feet.
Plaintiffs charge that the death of their son was due to the carelessness and negligence of the truck driver in the following respects, to-wit:
1. Failure to maintain a proper lookout and to keep the truck under control;
2. Failure to exercise the last clear chance to avoid the accident, and
3. Failure to bring his truck to a stop or change its course when he either saw or should have seen petitioners' minor son in a position of peril from which he was unable to extract himself.
Plaintiffs sued to recover damages suffered by them on account of the tragic death of their son. The father, in addition, sues for expenses incurred in treating the child during the brief period he lived after the accident and for funeral expenses. The owner of the truck and trailer, the carrier of public liability insurance thereon, being the Commercial Standard Insurance Company, and Arthur Anderson, the driver, were made defendants.
All defendants join in one answer. They specifically deny that the accident was to any extent the result of the carelessness or negligence of Arthur Anderson. In the alternative, they allege that the boy's own negligence contributed to the accident and plead such negligence in bar of recovery by his parents.
From judgment in favor of plaintiffs and against defendants in solido for $7,500, and in favor of H.F. Bechtold for $386.57, all defendants appealed. Plaintiffs, in this court pray for substantial increase in the judgment.
The facts of the case, with minor exceptions are not controverted. The trailer was loaded heavily and was on its way to Dallas, Texas. It was traveling at a speed not in excess of 15 miles per hour and was kept well on its side of the street. Anderson had driven it over this route many times.
In the northwest angle formed by the intersection of the streets is located a small building used as a grocery store. The building is so close to the sidewalks that the corner is commonly known as being a "blind" one, which means that the building's location prevents motorists going south on the avenue and those going east on Wilkinson Street from observing traffic respectively on the other street, until they have passed the wall lines of the building. There is a large vacant lot on the east side of the avenue opposite said store building on which small boys of the community frequently assemble to play soft ball and other games. At the time of the accident about four of them Were so engaged thereon.
The home of the plaintiffs is about a block from the intersection. They had not provided their young son with a bicycle, but he had learned to fairly well operate one. The bicycle on which he was riding when injured belonged to another boy of the community and it is not shown how long he had had it in his possession when the accident occurred. Plaintiffs did not know he was using the wheel. The boy was observed *Page 896 
by several persons as he rode toward the intersection.
Police officers, called by plaintiffs, testified that Samford is a through street and that traffic on Wilkinson, because it is a dead end street, is required to stop before undertaking a turn in either direction into Samford.
The truck driver testified that as soon as it was possible for him to do so, he looked to his right down Wilkinson Street and then observed the boy about the center of the street, forty feet away, coming fairly fast toward the intersection. At that time the front end of the truck was about crossing what would be the north curb line of Wilkinson Street if it were extended easterly. The truck was covering twenty-two feet per second. The driver did not attempt to do anything to avert the impending collision as he felt there was nothing he could do under the circumstances. In view of the overall length of the truck and trailer, we conclude from his testimony, that he opined that unless the boy stopped he would collide therewith as the street would be practically blocked by the time the boy got to the intersection. This is clearly reflected from the fact that although he did not hear the noise of the impact, as soon as he had cleared the intersection, he brought the truck to a stop and went back to see if anything had happened. He then discovered the body lying in the street. It was five or six feet into Samford and slightly north of the center of Wilkinson.
It is made reasonably clear that when the boy saw the large van in front of him he became excited and threw up his hands, without reducing the wheel's speed to any extent. There was evidence on the body of the van, immediately above the right rear wheel, indicating that his hands and head struck it there. He died of skull fracture.
If the rider of the bicycle in this case had been of such age and intelligence as to have been legally capable of contributing to the accident by his own negligence, a decision of the issues could easily be predicated upon the plea of contributory negligence. But, as it is, for defendants to escape liability for the results of the unfortunate accident, the driver of the truck must have been entirely free of negligence of any character that caused the accident or contributed proximately thereto.
The lower court acquitted the truck driver of negligence on all counts except that charging that he did not maintain a proper lookout and, as to this count, the court held him to have been negligent. In passing on this phase of the question the lower court, in written reasons for judgment, said:
"The driver does not testify, either on direct or cross examination, that he sounded his horn as he approached the intersection, hence we assume that he did not; therefore, we find that the driver proceeded down Samford Avenue with a heavily loaded truck, driving 15 miles per hour, and approached a blind intersection of two streets in a thickly populated residential section of the City of Shreveport with a play ground to the left where children were playing ball, two children on the right on the sidewalk and the deceased on a bicycle on Wilkinson approaching Samford Avenue, and the driver not seeing any of the children, playing near by on one side of the street and the two on the other side of the street without sounding his horn or giving any warning whatever of his approach, or slackening his speed to the minimum as he approached the blind intersection.
"We think the law is well settled that the driver of an automobile or truck is held to have seen what he was able to see and should have seen.
"We think the law is further well settled that a driver of a vehicle in a populated section of a City is bound to anticipate the presence of children along the streets;
"That where children are on the sidewalk and corners, it is the duty of a motorist to drive his machine at such rate of speed as will give him control thereof in an emergency."
The court predicated judgment mainly upon the following cases, to-wit: Doyle et ux v. Nelson et al, La. App.,11 So.2d 645; and Moreau v. Southern Bell Telephone Telegraph Company, Inc., La. App., 158 So. 412, both of which were decided by this *Page 897 
court. The facts of both cases differ widely from those of the present one. In the Doyle case the driver saw the child whom he injured, on the road side when some distance from her. In the Moreau case the facts are much stronger for the plaintiff therein than are those of the case at bar. There the accident occurred on a country highway and the driver had seen several children coming from a school house and cross the road ahead of him. He had stopped to allow them to safely cross over and assumed that all of the children had gone over. He then started his car forward and within a very short distance ran over a small child who suddenly emerged from behind a car parked on the side of the road. It was held that in driving his car forward on the assumption that it was safe to do so, under the circumstances, was negligence.
We do not agree with the lower court in its finding that because there were children playing ball on the vacant lot on the east side of Samford Avenue, some 60 feet or 70 feet away, at time of the accident, and because the truck passed two teenage girls on the west sidewalk of Samford Avenue, some distance from the intersection, immediately prior to the accident, the truck driver was legally required in order to acquit himself of the charge of not having kept a proper lookout, to have stopped his truck or reduced its speed considerably below 15 miles per hour before attempting to negotiate the intersection. The presence of these children did not and could not have suggested to the truck driver that possibly or probably anyone, especially a child of tender years, would be coming down Wilkinson Street on a bicycle at such rate of speed that would prevent him from stopping before running into the truck or van.
The driver of the truck enjoyed right of way on the avenue; he was on his proper side of the street, and was traveling at a rate of speed much less than he was authorized to travel under laws of the City. He had the right to assume, as he doubtless did, that his superior right would be respected by traffic on Wilkinson Street, which, as said before, is a dead end street.
The fact that vision down Wilkinson Street was obstructed by the store building until the front end of the truck was entering the intersection does not alter the legal situation as there were not present about the locus any unusual conditions that suggested to the driver the necessity for pursuing a course different from that which he did pursue. Certainly the conditions that arose immediately after his truck entered the intersection were not foreseeable; he had no reason whatever to anticipate them.
[1] In the absence of conditions at an intersection of the character we are discussing that would indicate or suggest to a motorist the need, out of an abundance of caution, to stop his vehicle or reduce its speed to a rate at which it could be instantly stopped, he is not required to take such action. In such circumstances the test, as said in Roder v. Legendre, et al, 147 La. 295, 299, 84 So. 787, 789, is:
"The question of whether defendant was negligent is to be tested by whether Mr. Legendre did that which a reasonably prudent man would not have done under the circumstances, or omitted to do that which a reasonably cautious man would have done."
The courts of this state and of other states have gone far in holding drivers of motor vehicles liable in damages for killing or injuring children on streets and highways, particularly where the surrounding conditions and circumstances were such as to put the motorist on notice that young children, in their indiscretion, might undertake to cross over ahead of him. The case of Moreau v. Southern Bell Telephone Telegraph Company, Inc., supra, goes further on the question than any of which we have knowledge.
The sudden appearance doctrine controls this case. If this boy afoot had suddenly run from behind the store building and been killed by violent contact with the truck or van, certainly there would have been no liability in favor of plaintiffs. Now, can the present case be distinguished in principle from the hypothetical one? We do not think so. The boy was going at *Page 898 
a rapid speed down grade. He came suddenly into view, and, evidently his speed was about the same as that of the truck or van, because he negotiated 40 feet while the truck and van covered about the same distance. The unwieldly truck and trailer could not be maneuvered or its course deviated as would have been possible with an automobile.
Concerning this doctrine, 2 Blashfield's Cyclopedia of Automobile Law and Practice, Perm.Ed., § 1498, page 532, has this to say:
"However, drivers or owners of motor vehicles are not insurers against all accidents wherein children are injured. Accordingly, a driver proceeding along a street or highway in a lawful manner using ordinary and reasonable caution for the safety of others, including children, will not be held liable for striking a child whose presence in the street could not reasonably be foreseen. He is not required to anticipate the appearance of children in his pathway, under ordinary circumstances, from behind parked automobiles or other obstructions.
"Thus, when a motor vehicle is proceeding upon a street at a lawful speed, and is obeying all the requirements of the law of the road and all the regulations for the operation of such machine, the driver is not generally liable for injuries received by a child who darts in front of the machine so suddenly that its driver cannot stop or otherwise avoid injuring him."
Several Louisiana cases are cited in support of this statement.
[2] We agree with the lower court in holding that the doctrine of the last clear chance, under the undisputed facts of the case, has no application. We are sure the truck driver could not have done a thing, after seeing the perilous situation of the boy, to prevent the accident. He saw him as quickly as possible and at a time when the front end of his truck was nearly opposite the north curb of Wilkinson Street.
Mathematical calculation proves that the driver was wholly powerless to perform any act that would have saved the boy's life, after he saw him. It is shown that the truck could have been stopped after application of the brakes in a distance of approximately ten feet. It is also shown that it would have required at least three-fourths of a second for the driver, after discovering the boy, to have effectively applied the brakes. In the meantime the truck and trailer would have traveled 16 1/2 feet (3/4 of 22 feet per second) to which add 10 feet necessary to stop the trucks after the brakes became effective, and we have a total of 26 1/2 feet (out of 32 feet) across the intersection that would have been perempted by the truck before it could possibly have been stopped. This would have left only the south 5 1/2 feet of Wilkinson Street open.
We are indebted to counsel of both sides for lengthy briefs in which they elaborately discuss the issues involved in this case and cite a multitude of cases in support of their respective contentions. No good purpose would be served by lengthening this opinion by citing the cases and comparing or differentiating the facts thereof from those of the case at bar.
[3] Our view of the case impels us to the conclusion that the accident, from the driver's standpoint, was unavoidable; and for the reasons herein assigned, the judgment appealed from is now annulled, avoided and reversed and there is now judgment in behalf of defendants, rejecting plaintiffs' demands and dismissing their suit at their cost.
 *Page 44