64 So.2d 463 (1953)
WILSON
v.
YELLOW CAB CO. OF SHREVEPORT, Inc.
No. 7943.
Court of Appeal of Louisiana, Second Circuit.
March 19, 1953.
*464 Love & Rigby, Shreveport, for appellant.
Reuben W. Egan, Lunn, Irion, Switzer, Trichel & Johnson and Harry A. Johnson, Jr., Shreveport, for appellee.
HARDY, Judge.
This is an action to recover damages in the nature of personal injuries suffered by plaintiff allegedly resulting from the negligence of defendant. After trial there was judgment in favor of plaintiff in the sum of $1,510, from which defendant has appealed. Plaintiff has answered the appeal, seeking an increase in the amount of the award.
Plaintiff, a twenty-one year old Negro man, was a fare-paying passenger in a taxi owned by the defendant company, driven by one of its employees, which was involved in an intersectional automobile collision, about 2:30 A. M. on November 25, 1950, as the result of which accident plaintiff sustained serious and painful injuries, hereinafter more particularly described. The collision occurred at the intersection of Pierre Avenue and Abbie Street in the City of Shreveport. The taxi was being driven north on Pierre Avenue at a speed variously estimated at from 18 to 40 miles per hour when it was struck broadside by a Chrysler automobile which was proceeding west on Abbie Street. Plaintiff, who was seated on the rear seat immediately behind the driver, was accompanied by two Negro women, a friend, Signora Bowen, who was seated beside him on the right, and his sister, Ella B. Wilson, who occupied the front seat to the right of the driver. At the time of the trial Signora Bowen could not be located, and she did not appear as a witness for either party. The three remaining occupants of the taxi cab were the only eye witnesses to the accident, who testified on trial of the case. The term, "eye witness", is somewhat misleading in the instant case because of the fact that neither plaintiff nor his sister saw the Chrysler automobile which struck the cab, and the driver himself, *465 according to his own testimony, saw the said vehicle only at or a fraction of a second before the impact.
The southeast corner of the intersection where the accident occurred is to some degree at least what is known as a blind corner, that is to say that the view of Abbie Street to the east with respect to approaching traffic on Pierre from the south is obstructed by a house which stands 19 feet 9 inches from the south curb of Abbie Street and 32 feet 8 inches from the west curb of Pierre Avenue. Additional obstructions consisted of shrubbery growing more or less profusely in the front yard of the said house toward the corner of the intersection and a hedge of trees occupying the neutral strip between sidewalk and curb along the south side of Abbie Street. It is conclusively established, both by the testimony of a number of witnesses and by the photographs introduced in evidence, that the obstructions are of such degree and nature as to materially and substantially interfere with the view. At the intersection Pierre Avenue is about 36 feet in width and Abbie Street approximately 24 feet, both measurements being from curb to curb.
In his petition plaintiff enumerated a number of acts of negligence as against the operator of defendant's cab, specifically; failure to keep the vehicle under control, driving at an excessive, dangerous and unlawful rate of speed, failure to maintain a proper lookout, failure to slow down and bring his vehicle under control, and failure to avert the collision by turning aside or stopping. Pierre Avenue is a designated right-of-way street upon which the speed limit is fixed at 35 miles per hour. Abbie Street is a secondary, unfavored street on which intersecting traffic is required by law to come to a complete stop before entering or crossing Pierre Avenue. The customary type of stop signs were maintained on Abbie Street in the usual locations at its approach from either direction to the intersection.
There is little room for disagreement as to the law applicable in the present case. The general rule with respect to the degree of care and the consequent liability of public carriers was enunciated by this court, on the basis of authorities therein cited and discussed, in Hopper v. Shreveport Railways Co., La.App., 51 So.2d 845. Unquestionably a common carrier is held, not simply to a reasonable degree of care, but to the highest degree of care, and the commission of any act of negligence or the omission of any act of care or caution, no matter how slight in degree, subjects such carrier to liability.
We do not think there is any need to discuss in detail all of the charges of negligence which plaintiff alleged and upon which he relies, since, in our opinion, the case may be resolved by determination of the charge that defendant's driver was guilty of negligence in failing to keep a proper lookout. If plaintiff has sustained this charge, as in our opinion he has, then it is clear that defendant's liability attaches, and it becomes answerable in damages to plaintiff's demands. We are fortified in this resolution by the fact that the district judge reached the identical conclusion.
As we have above observed, neither plaintiff nor his sister observed the approach of the Chrysler automobile which collided with the cab in which they were paying passengers. The taxi driver testified that he first saw the Chrysler automobile "as I was in the intersection" and that it was "coming at a pretty good speed." And, further, this witness testified that at the time "I was looking straight ahead". In a written statement made some six weeks after the accident, which statement was read and signed by the taxi driver and which was filed in evidence on behalf of plaintiff, the driver declared "I did not see the Chrysler that came out of Abbie Street and hit my cab."
Both plaintiff and his sister testified that at the time of the impact the cab driver was looking directly at and talking to the sister, Ella B. Wilson. It is to be observed that the taxi driver did not even contend that he saw the Chrysler as the cab was entering the intersection but as he was in the intersection. Since it is established that the collision occurred at or about the center of the intersection and that the cab was moving at a speed of between 25 and 40 *466 miles per hour, we think it is evident that defendant's driver did not see the Chrysler automobile until, as we have above remarked, the moment of or a fraction of a second before, the actual impact. Accordingly, we can only conclude that defendant's driver was negligent in failing to see what he could and should have seen.
But it is strenuously urged by counsel for defendant that the driver of the cab had the right to rely upon his preferred status due to the fact that he was traveling on a favored or right-of-way street. As has been many times observed by our courts the superior right which is accorded vehicular traffic on a preferred thoroughfare is not an invitation to negligence and certainly it does not relieve drivers from the results of their negligence. On the contrary the superior right is forfeited by the negligence of a driver. Among the most common acts of negligence which are unexcused by such preferred right are excessive speed and failure to maintain a lookout. Scott v. Richard, La.App., 24 So.2d 175; Culver v. Toye Bros. Yellow Cab Co., La.App., 26 So.2d 296; Prudhomme v. Continental Casualty Co., La. App., 169 So. 147; Bagley v. Standard Coffee Co., La.App., 168 So. 350; Heath v. Baudin, 11 La.App. 40, 122 So. 726; Buckley v. Featherstone Garage, 11 La.App., 564, 123 So. 446.
Similarly, the urging of the blind nature of the intersection avails nothing for defendant. It is well established that the greater the danger the greater the necessity for caution. Culpepper v. Leonard Truck Lines, 208 La. 1084, 24 So.2d 148.
In any event, since the testimony supports the finding that the cab driver did not make any observation prior to entering the intersection, it is evident that the obstruction to view is no pertinent factor in the consideration of his negligence.
Counsel for defendant cites and strenuously urges the holding of this court in Bechtold v. Commercial Standard Insurance Co., La.App., 31 So.2d 894, 896, in which the facts under consideration with respect to the physical surroundings of the locus in quo the accident occurred were strikingly similar to the instant case. Counsel points out the observation in our opinion that:
"* * * the driver of the truck must have been entirely free of negligence of any character that caused the accident or contributed proximately thereto."
On the basis of this expression since we held the truck driver in the Bechtold case free of negligence, it is contended that this defendant is entitled to the same finding. We cannot agree with this conclusion in view of the fact that we specifically pointed out the rule as to degree of care which was appropriate in the Bechtold case and which rule we supported by the following quotation from Roder v. Legendre, 147 La. 295, 84 So. 787, 789:
"The question of whether defendant was negligent is to be tested by whether Mr. Legendre did that which a reasonably prudent man would not have done under the circumstances, or omitted to do that which a reasonably cautious man would have done." (Emphasis supplied.)
As we have hereinabove emphasized, the rule with respect to degree of care which is here applicable is not the rule of "reasonable prudence" which was invoked in both the Roder and Bechtold cases but rather the rule of the "highest degree of care." The omission of any act of care or caution no matter how slight in degree is sufficient to sustain a finding of liability, in the instant case. The omission of the taxi driver to make proper, thorough and careful observation and to see that which he could and should have seen, the approach of the Chrysler automobile, is clearly such an act of negligence as supports the finding of liability against defendant.
It follows that judgment in favor of this plaintiff was properly allowed and we turn to a consideration of the quantum, with which both plaintiff and defendant evidenced dissatisfaction.
Plaintiff's petition itemized the damages claimed as follows:

Medical expenses to date $ 10.00
Future medical expenses 3,000.00

*467
Nervous shock and injury
 to the nervous system 1,000.00
Pain and suffering, past,
 present and future 2,000.00
Permanent impairment of
 speech and disfigurement 3,000.00
 _________
 Total $9,010.00

The district court allowed $10 covering the item of incurred medical expense, and the sum of $1,500 in response to the item claimed for pain and suffering. All the other items were disallowed, but, with respect to the claim for future medical expenses, the court reserved plaintiff's right to recover cost of plastic surgery.
We think the testimony in the record adequately supports the finding of the lower court with respect to the items of damages which were allowed. There is no dispute as to the $10 bill for medical attention. On the question of pain and suffering a summary of the testimony establishes that plaintiff sustained a severe cut on the face which extended from the angle of the jaw to a point in front of the chin and which required 108 stitches; that he was acutely ill for a period of some three weeks, more or less, during which time he suffered considerable pain; that his face was swollen to two or three times its normal size; that some of the sutures pulled loose, became infected and plaintiff suffered a high fever for some days; that pain of greater or less degree subsisted for a considerable period of time. Under these circumstances we think the award of $1,500 was neither inadequate nor excessive.
An allowance for "nervous shock and injury to the nervous system" is not justified by the testimony.
By the above dispositions we are reduced to a consideration of the respective items of future medical expense and permanent impairment of speech and disfigurement. There can be no question as to disfigurement resulting from the facial scar and the keloid growth, as testified by the medical experts. As is so often the case, we find that the record is not sufficiently clear to give us a properly detailed description of the scar and the consequent degree of disfigurement.
One of the medical witnesses testifying with reference to remedial treatment estimated the cost of all expenses in connection with a plastic surgery operation for the removal of the scar at $500. Further testimony on this point was curtailed by the district judge on the ground, as further expressed in his written opinion, that he was without authority to allow expenses for future medical treatment. With this conclusion we are unable to agree in view of the fact that allowances for such treatment, if and when supported by competent evidence, are customarily incorporated in judgments responsive to claims for damages. Be this as it may, we think the testimony in the record is sufficient to establish the sum of $500 as being a fair and reliable appraisal of the costs of this treatment.
We do not think in all reason that plaintiff is entitled to recovery for both permanent disfigurement and the expense of correcting such disfigurement, which could be effected for the sum of $500. For this reason we believe that one allowance should cover both claims. It follows that plaintiff must eventually determine for himself whether he will retain the permanent disfigurement or submit to an operation for its correction. Under these circumstances we think the allowance of the amount estimated for the expenses of plastic surgery is a fair basis of award.
In his opinion the district judge observes that he did not find satisfactory support of the claim of impairment of speech, and the record discloses no manifest error in this conclusion.
For the reasons assigned the judgment from which appealed is amended by increasing the principal sum thereof to the amount of $2,010, and, as amended, it is affirmed at appellant's cost.