CAVANAUGH, Judge.
Plaintiff, the owner of a 1951 Chevrolet taxicab being driven by his employee Lemon Avie, collided with a GMC truck belonging to Albert Rozas and being driven by his daughter, Priscilla Ann Rozas, and insured by the defendant. The collision occurred at the intersection of East LaSalle Street and Latour Street in the city of Ville Platte, Louisiana. LaSalle Street runs east and west and Latour Street runs north and south. LaSalle Street is a paved street and under the city ordinances of the city of Ville Platte is a right of way street, where, on the other hand, Latour Street is a gravel street and at the south end of the intersection on Latour Street the city has erected a stop sign.
*126 Plaintiff alleges that his taxicab being driven by his employee and the truck being driven by Priscilla Ann Rozas collided at the intersection of these two streets and that the accident was caused by the gross negligence and carelessness of the driver of the truck and that the employee of plaintiff was guilty of no contributory negligence.
The specific acts of negligence charged against the driver of the insured truck are: (1) That it was being driven at a rate of speed in excess of 35 miles per hour and in excess of the 25 mile speed limit permitted by the city; (2) Failing to keep a proper lookout and failing to observe if any traffic was approaching on East LaSalle Street; (3) Disregarding the stop sign as she approached the intersection and failing to timely apply her brakes to avoid the accident.
Plaintiff claims damages in the total sum of $914.87.
The defendant, by answer, admits that the driver of the taxicab was in the employ of plaintiff and that a collision occurred between the taxicab he was driving and the truck insured by the defendant. Defendant denies that the driver of the truck was in anywise negligent. It admits that it had issued the insurance policy of public liability and property damage in favor of Albert Rozas, the owner of the truck, all ■of which was set forth under the terms and conditions of the policy. The defendant specifically alleges that the driver of the truck was not guilty of any negligence •connected with or growing out of the accident.
Alternatively, it pleaded that if the driver of the truck was guilty of any negligence, which it denied, then that the driver of plaintiff’s taxicab was guilty of contributory negligence which contributed to or was the direct proximate cause of the accident. The specific acts of contributory negligence alleged are as follows: (1) In operating the vehicle at an excessive rate of speed in violation of the ordinances of the city of Ville Platte, Louisiana, and in disregarding the principles of due care and prudence; (2) In operating the vehicle at a speed of 50 miles per hour in violation of the speed limit of the city of Ville Platte; (3) Failing to maintain a proper lookout; (4) Failing to have the vehicle under proper control; (5) Failing to recognize the right of the driver of the truck Priscilla Ann Rozas since she was approaching from the right; (6) Failing to recognize the right of the driver of the truck since she had pre-empted the intersection and had practically negotiated the same; (7) Failing to give any warning whatsoever of his approach to the intersection; (8) Failing to see the vehicle being driven by Priscilla Ann Rozas or if he did see it in ignoring its presence; (9) Failing to see what he should have seen and to do what he should have done.
At the beginning of the trial plaintiff and defendant stipulated that the accident occurred on May 23, 1953, at approximately 1:45 p. m.; that at the time of the accident the weather was clear and the pavement dry; that the collision occurred at the intersection of East LaSalle Street and Latour Street in the city of Ville Platte; that the truck belonging to Albert Rozas was being driven by Priscilla Ann Rozas in a northerly direction on Latour Street and that the taxicab belonging to the plaintiff was being driven by Lemon Avie in a easterly direction on LaSalle Street; that Priscilla Ann Rozas was using the automobile belonging to her father with her father’s permission and that Lemon Avie was in the course and scope of his employment with the plaintiff; that Southern Farm Bureau Casualty Company had issued a policy of public liability and property damage insurance which was in full force and effect at the time of the accident herein sued on, and that the policy is in an amount sufficient to cover the amount claimed; that the speed limit regulation of the city of Ville Platte is 25 miles per hour.
After trial, the district court, in a written opinion, awarded the plaintiff judgment in the sum of $457.07, together with legal interest from September 3, 1953, together with all costs.
*127 The defendant has appealed.
In view of the fact that a plea of contributory negligence is interposed by the defendant in this case we will review the evidence adduced on the trial to establish the defense because if the plaintiff was guilty of contributory negligence proximately causing the accident he is precluded from recovery.
In most of these intersectional collisions both parties are usually to blame and each one tries to place the responsibility on the other. Plaintiff’s driver Lemon Avie testified that he was driving the Chevrolet taxicab belonging to plaintiff on the date the accident happened and he stated that before he got to the intersection he was driving 35 miles per hour and that when he got to this intersection he had slowed down to 25. That when he saw the truck it was too late and that he did not stop and put on his brakes and tried to go around. He does not know when he saw the truck in the intersection but it was too late. That his cab hit the truck in the middle of the road; that the front end of his cab hit the truck on the front at the fender and door; that he did not remember how close he was to the intersection when he saw the automobile but that he was close and tried to apply his brakes and go around; that there was a stop sign on Latour Street at the intersection but that the driver of the truck did not stop.
On cross examination the witness stated that he doesn’t ever drive fast and that he was going at a speed of 25 miles when it happened but had been driving 35 miles and that he slowed down to a speed of 25 miles about a block before he got to the intersection; that he was familiar with the intersection and had driven over the streets often and practically every day; that in this area of town there are a number of houses and that it is a built up section and that a number of people reside on the street; he couldn’t hardly see on that corner because of the trees and there was also a little fence there; that he didn’t figure how far he could see down Latour when he was 50 feet from the intersection. He didn’t know how far he was from the intersection but when he saw the truck he was right on it and that he had good brakes on his car and tried to go around it. This witness had been driving a car for 12 or 15 years and stated that he had never had an accident and that from on LaSalle Street you can’t see a car coming into the intersection until you get right on it and that as soon as he saw the truck he put his brakes on and skidded and that he skidded all the way until he struck the truck; that he blew his horn before he reached the intersection but did not know how far it was. He stated that the truck had not stopped and that he did not look for skid marks on the pavement. He was repeatedly asked how far he was from the truck when he first saw it and he never would state the distance but would always say it was close; that he knew he was on the right of way street but that he knew that motorists entering the intersection did not stop always for the signs and that he did not see anything on the corner before he saw the truck.
City police officers Charlie Fontenot and Rodney Fontenot were immediately called to the scene of the accident and it is their testimony that no witnesses saw the accident except the occupants of the two vehicles and that the driver of the truck told them that she did not stop at the stop sign and that she never did see the stop sign; the witness Charlie Fontenot did not make the investigation but that the other officer accompanying him did make the investigation. The witness Rodney Fontenot made a report at the time he went to investigate the accident and he stated that the automobiles had not been moved and that he interrogated the driver of the truck and she told him she was driving 35 miles per hour and that the driver of the truck put on her brakes. That the stop sign was on Latour Street; that he saw the skid marks of the truck and also saw the skid marks of the taxicab; that the truck had skidded about 15 feet and that the taxicab had skidded approximately 30 feet. That he put in his report the cause of the accident speeding and failing to stop at the stop sign; that *128 he did not find any improper driving on the part of the taxicab driver of Eldridge Hiclcerson, the plaintiff. On cross examination the witness stated that he just approximated the distance the car skidded at 30 feet and that it could have been more or it could have been less; that the weather was clear and the pavement dry; he says that the corner is a blind corner but that you can see through the trees but that it is a dangerous corner and that motor vehicles approaching the corner should slow down. That the little Rozas girl was pretty nervous and told him that she was driving 35 miles per hour and that she was in second gear and he stated that he thought that she should have stopped where she applied her brakes and that she was getting in the intersection when she applied her brakes. That a charge was made against the driver of the taxicab for speeding and that he was fined but never pleaded guilty.
The defendant offered the testimony of Hillary Vizinat, Priscilla Ann Rozas and Lucille Moreaux to establish the contributory negligence of the driver Lemon Avie. The witness Hillary Vizinat stated that he lived at 409 E. LaSalle Street, which is about 200 feet west of the intersection where the accident occurred. That the accident happened at about 1:30. That he was in his front room facing the street; that he did not see the collision but that he saw the taxicab going in front of his house and that he approximated its speed at that time at 50 miles per hour and that he heard the brakes being applied right after it passed and immediately after he heard the crash he rushed out of his house to the scene of the accident; that he estimated that the taxicab had skidded 50 or 60 feet and that he saw the skid marks and that they measured 20 steps and that he measured the skid marks right after the accident. He stated that the left front fender and door of the truck had been hit by the front end of the cab. That the truck was hit on the right hand side of the street but the impact swerved the truck way past the center of the street; that the truck was in the right lane of traffic and it was knocked or shoved about 8 feet sideways after the impact; that he carried the little Moreaux girl in his car to the hospital; that he was the first man to the scene of the accident after it happened and that he noticed skid marks of the truck on Latour Street; that his house sits back about 25 feet from the street; that the police officers were there when he stepped the skid marks and that he did not see the policemen measure them; that the truck was almost to the center of the intersection when the impact occurred. This witness also stated that he had been driving a car for 14 years.
Priscilla Ann Rozas, who was driving the truck at the time of the collision, is 17 years old. She and her friend, Lucille Moreaux, were delivering graduation presents and she was driving the truck with the permission of her father; she told the police officers that she was driving at a rate of speed of 35 miles per hour and just before she got to the intersection she noticed the stop sign and shifted to second gear but did not come to a complete stop; that she looked in both directions, did not see the car and started to cross when she noticed the car coming toward her and slammed on the brakes. She was then asked to tell how far the car was from her when she saw it. She answered: “I can’t estimate the feet but I can just about show the distance. It was about from here (witness indicating where she is sitting in the witness box) to that first bench down there (about 18 feet)”. She could not estimate the speed of the vehicle at that time but stated that it was coming pretty fast and that she just saw it in a blind flash. That the taxicab driver applied his brakes because she heard them screeching and that they were being applied at the time the cab hit the truck. She stated that as soon as she saw the car coming she applied her brakes, that was the first thing that came to her mind but that she did not remember much after he hit her; that she believed her truck was stopped at the time of the impact; that her truck had reached the half way mark of the intersection when the impact occurred; that the half of the street behind her was open; that she did *129 not look for any skid marks; that the cab hit her truck a pretty hard blow because the girl who was with her passed through the window on the right-hand side of the truck or that it shoved her elbow through the window; she didn’t estimate how far the truck skidded sideways after the impact but that the taxicab was jammed up against the side of the truck; that after she went home she went out and drove the truck and tested the speed and she stated that 'she couldn’t have been making over 25 miles at the time of the accident.-
Lucille Moreaux, who was riding in the truck, testified that she was in the truck at .the time of the accident; that she thought the truck was being driven at a speed of about 25 miles per hour and that at. the time they entered the intersection Priscilla Rozas looked both ways and put the truck in second gear; that she did not look and that they had. got to the middle of the street when they were struck by the taxicab; that she. did not see the cab until it was. a short distance when she saw- it just before the impact; that she thought the car was traveling at least 45 miles per hour when it struck them and that.Priscilla screamed and put on her brakes and that the car skidded into them; that the truck had come to a complete stop when it was struck by the car; that the witness said she was looking toward the driver of the truck when the impact occurred and that she did not see the stop sign. The witness stated that the cab was coming fast and he applied his brakes.
It was stipulated that if Professor Phillips, a witness who lived within two blocks of the intersection who went to the scene of the accident immediately after it happened, were present he would testify that he saw the skid marks of the taxicab and that he estimated that the cab skidded on the pavement 50 feet.
The district judge held that the proximate cause of the accident was the failure of Priscilla Ann Rozas, the driver of the truck, to stop at the stop sign and before entering a right of way street and that the driver of the motor vehicle on a right of way street could assume that the driver of a motor vehicle on an unfavored street would obey the law and stop at the stop sign. •
If these skid marks of the taxicab were 50 or 60 feet from the point of impact as testified to by the witness Vizinaf, who measured them, and Professor Phillips, or were for at least a distance of 30 feet as testified to by plaintiff’s witnesses, then súrely' the cab driver saw the truck and commenced to apply his brakes more than a distance of 18 feet as testified by the two young ladies in the truck. The whole evidence as we have hereinabove attempted to analyze it shows that the driver of the truck was negligent in not ’stopping at the stop sign and ascertaining if she could go across the street with safety, but if she slowed down there as she testified she did arid looked both ways and did not see the oncoming cab as she testified then there was no negligence on her part in'trying to negotiate the intersection. ’ The driver of the cab would never say how far he was from the intersection when he first saw the truck but if he was'200 feet when, he passed Vizinat’s house and if he applied his brakes 50 feet from the intersection plus his'reaction time after he saw the truck would certainly place him at a distance of 75 or 80 feet from the intersection at the time he first saw the insured truck going into the intersection and if we analyze the cab driver’s testimony correctly you have to be nearly up1 to the intersection to see a car entering the intersection from Latour Street. The evidence in this case impresses us that although the cab driver knew that this was a dangerous intersection and that motor vehicles entering it from Latour Street some times did not obey the stop signs and the assumption by which a driver on a favored street enjoys as applied by the court below to decide this case in favor of the cab driver can not be applied here because he was unusually familiar with the hazard of this particular intersection and he should have approached it with due care and caution. We believe that his own evidence, as well as that of Vizinat and Phil *130 lips, coupled with the physical facts in this case, conclusively show that had he been keeping’ and maintaining a proper lookout and had not been driving at an excessive rate of speed he could have at least avoided this accident. It was not necessary for him to use a superlative degree of care and caution as stated by the court below. It was only necessary for him to use his common sense and be guided by that which he had acquired during the course of his everyday business of driving this cab on this particular street, at this particular intersection. It is our opinion that his negligence in driving his cab at an excessive rate of speed and in not maintaining a proper lookout at this blind corner at least contributed to the collision.
We believe that the court below has accorded too much weight to the stop sign and favored street rule and has not given any consideration whatever to the rule requiring a motorist on a favored street to maintain a proper lookout at all times and have his car under control although he is traveling on a favored street at a blind intersection. The driver of a motor vehicle on a favored street can lose the protection which the rule affords him by not maintaining a proper lookout. When we take into consideration the physical facts in this case coupled with the evidence of plaintiff’s driver that he considered because he had the right of way he was not required to exercise due caution. This is evident by the fact that he never did say how far he was from the intersection when he first saw the truck. Knowing the hazard at this particular intersection he should have approached it with caution and should not have been driving at such a rate of speed he would have to apply his brakes upon seeing the insured truck making this entrance. The driver on a favored street has to keep a proper lookout the same as one on an unfavored street.
The court below accepted the evidence of the police officer whose testimony was that the skid marks reflected that the cab only skidded 30 feet while that of Vizinat and Phillips showed between SO or 60 feet. The plaintiff’s driver was convicted in the City Court of speeding and he admits in his own testimony that he had been operating the cab at a speed of 35 miles within a block of this intersection but he claimed he reduced his speed to 25 miles at the time the accident happened. The evidence clearly preponderates in favor of the defendant that plaintiff’s cab skidded at least 50 feet before he struck the side of the truck. Even assuming that he was going 30 miles an hour, which is 5 miles over the 25 miles per hour speed limit of the City of Ville Platte, the cab would travel 44 feet per second at that rate of speed and allowing three fourths of a second for thinking or reaction time the cab would have traveled 73 feet before the impact. On the other hand the truck entering the intersection at 35 miles per hour would have made a safe exit if that speed had been maintained. It is important to note here that the truck although traveling at an alleged faster rate than the cab only skidded 15 feet and was practically stopped when the impact occurred. If it had been traveling at a speed of 35 miles per hour or anything like that speed it certainly would not have stopped in the center of the intersection. The fact that the truck pivoted and was shoved sideways in the center of the intersection eight feet indicates to us that it was stopped when the impact occurred. If plaintiff’s cab driver had been operating the cab at a proper rate of speed and had maintained a proper lookout he could have avoided the accident.
We do not believe plaintiff’s driver had decelerated his speed when he said he had in view of the testimony of Vizinat and Phillips and the physical facts in the case.
We believe that our holdings in H. & G. Furniture Co. v. Duhon, La.App., 46 So. 2d 521, and in Browne v. Hall, La.App., 70 So.2d 199, are applicable here. In Browne v. Hall the defendant’s automobile skidded 40 feet after the plaintiff’s car had emerged from an unfavored street at a blind intersection at which a stop sign was erected.
The following statement from Wilson v. Yellow Cab Co. of Shreveport, La.App., 64 *131 So.2d 463, 466, is certainly applicable to the position assumed by the plaintiff in this case:
“But it is strenuously urged by counsel for defendant that the driver of the cab had the right to rely upon his preferred status due to the fact that he was traveling on a favored or right-of-way street. As had been many times observed by our courts the superior rights which is accorded vehicular traffic on a preferred thoroughfare is not an invitation to negligence and certainly it does not relieve drivers from the results of their negligence. On the contrary the superior right is forfeited by the negligence of a driver. Among the most common acts of negligence which are unexcused by such preferred right are excessive speed and failure to maintain a lookout. Scott v. Richard, La.App., 24 So.2d 175; Culver v. Toye Bros. Yellow Cab Co., La.App., 26 So.2d 296; Prudhomme v. Continental Casualty Co., La.App., 169 So. 147; Bagley v. Standard Coffee Co., La.App., 168 So. 350; Heath v. Baudin, 11 La.App. 40, 122 So. 726; Buckley v. Featherstone Garage, 11 La.App. 564, 123 So. 446.
“Similarly, the urging of the blind nature of the intersection avails nothing for defendant. It is well established that the greater the danger the greater the necessity for caution. Culpepper v. Leonard Truck Lines, 208 La. 1084, 24 So.2d 148.”
See also Phillips v. Central Surety & Ins. Corp., La.App., 25 So.2d 310; Comeaux v. Blanchet, La.App., 69 So.2d 527.
For the reasons assigned the judgment of the lower court is avoided and reversed and judgment is rendered in favor of defendant, rejecting plaintiff’s demands, at his costs.
Rehearing denied.
TATE, J., recused.
CAVANAUGH, Judge ad hoc by appointment.