TATE, Judge
(dissenting).
Fully respecting the views of my conscientious brethren of the majority, I believe that the District Court’s judgment holding the Baton Rouge Bus Company liable should not be reversed. In my opinion, the majority fell into error by failing to hold the Baton Rouge Bus Company to the standard of care owed to the plaintiff, its fare-paying passenger, by this public carrier.
As we stated in Hayes v. Illinois Central Railroad, La.App., 83 So.2d 160, at page 162, summarizing the long-settled and well-established jurisprudence, “ 'where a passenger is injured in an accident and has failed to reach his destination in safety, the burden is on the carrier to prove itself free from fault.’ ” We applied in that case the well-established rule that a carrier is liable for “the slightest negligence with reference to” the care owed a fare-paying passenger, as “the carrier is required to do all that human sagacity and foresight can do under the circumstances, in view of the character and mode of conveyance adopted, to prevent injury to passengers,” Mire v. Lafourche Parish School Board, La.App. 1 Cir., 62 So.2d 541, 543. See also Wilson v. Yellow Cab Company, La.App. 2 Cir., 64 So.2d 463, 465, which points out that a common carrier is not held simply to “a reasonable degree of care, but to the highest degree of care, and the commission of any act of negligence or the omission of any act of care or caution, no matter how slight in degree, subjects such carrier to liability”, 64 So.2d 465.
I think that the majority fell into error of law by treating this case as a controversy between the drivers of the two vehicles involved, without consideration of the high standard of care owed by the carrier to its fare-paying passenger, the plaintiff.
Thus, even assuming that the traffic light turned to caution after the city bus driver entered the intersection on a green light, the intersection was 55 feet in width. The city bus was travelling at a speed of 5-10 mph, and thus under all applicable stopping tables able to come to a stop, including reaction time, between 15-20 feet after the school bus turned into the intersection. (See Blashfield’s Cyclopedia of Automobile Law, Section 7237; Lawyer’s Motor Vehicle Speed Chart; 14 Tul.L.Rev. 503). (The bus driver testified that he actually came to a stop within 2-3 feet.)
I think it is apparent that, even if the green light turned to caution as the bus went under it (the most favorable possible construction of the evidence for this defendant) , the bus driver — who legally is held not *491 simply to “a reasonable degree of care, but to the highest degree of care”, so that “the omission of any act of care or caution, no matter how slight in degree” on his part, is actionable, Wilson case, above-cited, 64 So.2d 465 — was deficient in the high degree of duty owed his passenger in not observing the entrance of the school bus and coming to a stop, during the time that he crossed the wide (55') intersection at a speed of 5-10 mph (7.3 to 14.6 feet per second).
Furthermore, I think the majority without any legal justification whatsoever ignored portions of the testimony of Charles Calcóte, who was summoned by and testified on behalf of the defendant. This witness was sitting on the first seat facing forward in the bus on the righthand side. Cal-cóte testified that the light was green when the city bus entered the intersection. While the majority accepts his testimony to such effect, it completely ignores the remainder of his testimony under cross-examination, when he stated that at the time the school bus entered the intersection either the front or the center of the city bus was just five feet past the west curb. (Tr. 132.)
It is admitted by the majority, and not seriously denied by able counsel for the defendant city bus company, that if indeed the school bus entered the intersection when the city bus was still just past the west curb, then the city bus driver had ample opportunity to observe the other vehicle and to come to a safe stop. And why does the majority not accord such effect to this testimony, produced on behalf of the defendant and by which the defendant is bound? Because, it thinks, Calcóte may have been mistaken or the court reporter may have made an error in transcription.
I respectfully suggest that if Calcóte was in error — and I find no indication in his testimony that he was or that such testimony of his was a slip of the tongue — the appropriate way to secure a correction of this testimony is by re-direct examination at the trial. Likewise, if the court reporter was in error, the transcript below could and should have been corrected. But I can find no legal authority for the proposition that the way to overcome unfavorable evidence —unfavorable evidence, moreover, from a party’s own witness, and not contradictory of anything else the witness said — is to argue to the appellate court that such was a clerical error or that the witness could not have meant what he said. I may respectfully suggest that it is beyond the power of the appellate court to revise the sworn testimony of the record in this manner.
Passman, the city bus driver, testified, incidentally, that the point of impact was 35 feet past the east curb, or a bus length. Both his bus and the school bus were without contradiction no more than 28 feet in length. Involved in the impact were the left front bumper of the school bus and the right front door of the city bus. Accepting Passman’s account of the accident as correct, the impact occurred after both the city bus and the school bus had negotiated the intersection and were straightened out on Government Street east of the intersection. Since without contradiction both vehicles were proceeding very slowly, and since there was no oncoming traffic, it would appear to me that even under Passman’s testimony no accident would have occurred had he exercised the slightest care.
This evidence was produced by the defendant to exculpate itself from liability. Far from doing so, I think on its face it plainly proves that the defendant company was deficient in the legal standard of care owed its passenger.
I must respectfully, therefore, dissent from this reversal of the trial court judgment.